# Exhibit "6"

**TO DECLARATION OF DOUGLAS R. CLOUD IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANT PORT OF SEATTLE'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COMPLAINT**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRACY JONASSEN,                    )
                                   )
                    Plaintiff,     )
                                   )
          vs.                      )    No. 2:11-ev-00034-RAJ
                                   )
PORT OF SEATTLE, a municipal       )
corporation,                       )
                                   )
                    Defendant.     )
                                   )

DEPOSITION OF CYNTHIA ALVAREZ
Thursday, February 16, 2012

APPEARANCES

For Plaintiff:        DOUGLAS R. CLOUD
                      Law Offices of Douglas R. Cloud
                      901 South I Street, Suite 101
                      Tacoma, Washington  98405


For Defendant:        SHANE CRAMER
                      Danielson, Harrigan, Leyh & Tollefson
                      999 Third Avenue, Suite 4400
                      Seattle, Washington  98104



Also Present:         TRACY JONASSEN



Reported by: Betsy E. Decater, RPR
             License No. 601-835-443

1                          INDEX OF EXAMINATION

2
                                                PAGE:LINE
3

4       CYNTHIA ALVAREZ

5

6       By Mr. Cloud                              3     18

7

8

9                              EXHIBITS

10

11                                              PAGE:LINE

12

13      1         Port of Seattle Code of Conduct      5     6

14      2         Intake/Phone Call from Tracy
                  Jonassen 1-4-10                     18    11
15
        3         Phone Call from Tracy Jonassen
16                4-25-08                             19    6

17      4         Intake Meeting with Tracy Jonassen
                  4-30-08                             28    10
18
        5         Document by Tracy Jonassen          49    4
19
        6         Phone Call from Tracy Jonassen
20                1-14-10                             52    4

21      7         File Contact Sheet                  52    18

22      8         Memorandum of Understanding         54    3

23      9         Meeting wit Jan Schmitt
                  5/6/08                              43    1
24
        10        Anti-Harassment HR-22 - 5/16/06     6     19
25

1       an employee as a possible violation of The Port's code of

2       conduct?")

3                   MR. CRAMER:  Objection, foundation.  You can

4       answer.

5                   THE WITNESS:  Yes.

6   Q   And, in fact, an employee should be protected by the code of

7       conduct from such a request by a supervisor; isn't that

8       correct?

9   A   **The code of conduct prohibits retaliation for participating**

10      **in an investigation.**

11  Q   And, in fact, if a manager was to create false testimony or

12      to lie in an investigatory proceeding or in a Loudermill

13      type hearing, that would be a violation of the Port's code

14      of conduct, would it not?

15                  MR. CRAMER:  Objection, form, vague, compound.

16                  THE WITNESS:  To lie during an investigation, yes,

17      would be a violation.

18  Q   And, in fact, that had been -- that has been The Port's

19      policy for the time that you've worked there, has it not?

20  A   **We expect managers, employees involved in investigations to**

21      **tell us the truth, yes, and that's from the very beginning.**

22  Q   And, in fact, if a manager lied or misled during an

23      investigation or during a Loudermill hearing, that would be

24      a serious violation of The Port's code of conduct, would it

25      not?

```
 1                    MR. CRAMER:  Objection, form, compound.

 2                    THE WITNESS:  Yes.  Yes, if there was evidence

 3         reflecting that behavior, yes.

 4    Q    And that's been the case since you've worked at The Port,

 5         has it not?

 6    A    Yes.

 7    Q    That type of behavior has never been countenanced by The

 8         Port, has it?

 9    A    Would you restate that?

10    Q    Yes, I will.

11                    That type of behavior has never during your time

12         at The Port been acceptable pursuant to The Port's code of

13         conduct or other ethics policy, has it?

14    A    Correct.

15    Q    And, in fact, that type of behavior could be construed as

16         retaliation against an employee, could it not, depending

17         upon if that employee had raised issues pertaining to that

18         manager before?

19                    MR. CRAMER:  Objection, foundation, calls for

20         speculation.

21                    THE WITNESS:  I don't understand the question.

22    Q    Let's have her read it back, and if you can understand it

23         let me know.  And if you can't, I'll restate it.

24              (The record was read by the reporter as follows:

25         "Question:  And, in fact, that type of behavior could be
```

```
 1            construed as retaliation against an employee, could it not,

 2            depending upon if that employee had raised issues pertaining

 3            to that manager before?")

 4                    MR. CRAMER:  Same objections.

 5                    THE WITNESS:  I don't know.

 6      Q     Are you saying it would depend on the circumstances?

 7      A     Yes.

 8      Q     All right, then.  May I give you a hypothetical?

 9                    I'm going to ask you to assume that an employee

10            had raised issues with a manager in regards to possible

11            misconduct.  I will ask you to further assume that that

12            manager brought disciplinary actions subsequent to receiving

13            the complaints against the complaining employee.  I will ask

14            you further to assume that the manager lied or misled in his

15            testimony during that Loudermill hearing.  Would that be a

16            serious violation of the code of conduct?

17                    MR. CRAMER:  Objection, form, foundation, and

18            complete hypothetical.  She's not designated as an expert

19            witness.  That's an improper question.

20                    THE WITNESS:  The misconduct complained about by

21            the employee that sets this up, it would depend on that.

22      Q     But certainly there are scenarios that the complaint would

23            trigger a potential violation through the testimony of the

24            code of conduct?

25                    MR. CRAMER:  Same objection.
```

```
 1                    THE WITNESS:  Yes, there are scenarios.

 2   Q    That could be considered retaliation?

 3   A    Yes.

 4   Q    And that would be a violation of The Port's code of conduct?

 5   A    Yes.

 6   Q    And that has been the case since you've been employed at The

 7        Port?

 8   A    Yes.

 9   Q    So as I understand it, The Port does hold its supervisors,

10        management and employees to a high standard; is that

11        correct?

12                    MR. CRAMER:  Objection, vague.

13                    THE WITNESS:  I don't understand your question.

14   Q    All right.  That's fair.  Let me see if I can restate it.

15            The code of conducted, the anti-harassment policy

16        and the various other policies of a similar nature adopted

17        by The Port during your tenure are all to be followed by all

18        employees of The Port; is that correct?

19   A    Yes.

20   Q    And, in fact, those requirements are independent of any

21        collective bargaining agreement or employment contract

22        between the employees; isn't that correct?

23   A    Yes.

24   Q    Did Mr. Jonassen ever report possible improper governmental

25        action to you?
```

1              MR. CRAMER:  Objection, vague.

2              THE WITNESS:  Do you have my notes available?

3    Q    I do.  Let's go ahead and show you.  I'm going to go off the

4         record and show you the exhibits that we've marked.  You can

5         go through them and familiarize yourself with them and then

6         we'll go back on the record.

7                                        (Off the record.)

8    Q    Let me just make sure they're in order, and then we'll go

9         through them one at a time.

10              I'm going to show you what's been marked as

11        Exhibit 2 and ask you to identify that document.

12   **A    These are my notes from a telephone call from Tracy Jonassen**

13        **dated January 4th, 2010.**

14   Q    And were these notes made in the ordinary course of

15        business?

16   **A    Yes.**

17   Q    And what is the substance of the notes from your

18        perspective?

19              MR. CRAMER:  And take your time to review them if

20        you need to.

21              THE WITNESS:  Okay.  From reviewing my notes, it

22        appears that Tracy called me to complain about poor

23        treatment by Paul Price about a workers' comp claim that he

24        had open and challenges he was having with the request for

25        light duty.

 1    Q      Would you consider this as a complaint of retaliation?

 2    A      **By the end of this conversation -- we didn't complete our**

 3           **conversation, we had to schedule additional time to discuss**

 4           **it -- I was not clear that he had, in fact, alleged**

 5           **retaliation.**

 6    Q      Now look at Exhibit 3, please, and identify that document.

 7                       What is that, Exhibit 3?

 8    A      **Exhibit 3 is -- are my typed notes from a phone call from**

 9           **Tracy Jonassen on April 25th, 2008.**

10    Q      And, in fact, in this document those notes clearly reflect

11           that Tracy had alleged retaliation; is that correct?

12    A      **Yes.**

13    Q      And, in fact, he was alleging retaliation as a result of his

14           testimony in support of Omayio Moikobu; is that correct?

15    A      **Yes, he made that allegation.**

16    Q      Do you know what that incident involved?

17                       MR. CRAMER:  To the extent that it would call for

18           Ms. Alvarez to discuss her mental impressions from any

19           investigation she conducted into the Moikobu/Banomi

20           investigation or incident at the behest of -- that she

21           conducted at the behest of in-house counsel at The Port, I

22           will instruct her not to answer because we believe it's work

23           product and privileged.

24                       MR. CLOUD:  Okay.  So let's go ahead and redo the

25           question there and have our court reporter read my last

1  A  No. I did have access to the investigative findings.

2  Q  But in any event, you were aware that Tracy had provided

3     evidence in that pertaining to the Moikobu/Banomi incident?

4  A  He told me he did.

5  Q  But you knew that at the time, though, didn't you, since you

6     interviewed him yourself?

7  A  He was telling me that he was being retaliated against

8     because of his involvement in the Sarju investigation of

9     Moikobu's investigation. That was separate from my

10    investigation.

11 Q  But The Port had full knowledge through you that Tracy had

12    spoken with Mr. Sarju and with yourself back when the

13    investigation occurred in 2005, correct?

14       MR. CRAMER: And I'll ask you not to disclose the

15    contents of any interviews you had in connection with those

16    investigations. Having said that, if you can answer, go

17    ahead.

18       THE WITNESS: At the time of this conversation that

19    we're talking about, I knew that I had interviewed him as

20    part of my investigation of Mr. Moikobu's allegations.

21 Q  Now, in Exhibit 3 Tracy alleges that he was retaliated

22    against since the Omayio incident, correct?

23 A  Yes.

24 Q  And you took that to mean the incident that you investigated

25    back in 2005, did you not?

1    A    I took his allegation to be that he was retaliated against

2         since he spoke to Mr. Sarju, the investigator that was hired

3         by The Port.

4    Q    In the time frame 2005, though, right?

5    A    I'm not sure of the time period.

6    Q    Whatever the time period, though, it was several years

7         before April 25th, 2008, correct?

8    A    That he spoke to Mr. Sarju, yes.

9    Q    And, of course, it would be a violation of The Port's

10        anti-harassment and/or code of conduct policies for Mr.

11        Jonassen to have been retaliated against for his testimony

12        since the Omayio incident; isn't that correct?

13             MR. CRAMER:  Objection, form.

14             THE WITNESS:  Yes.  If that is what happened, that

15        would violate the policy.

16             MR. CRAMER:  Can you read the question back,

17        please.

18        (The record was read by the reporter as follows:

19        "Question:  And, of course, it would be a violation of The

20        Port's anti-harassment and/or code of conduct policies for

21        Mr. Jonassen to have been retaliated against for his

22        testimony since the Omayio incident; isn't that correct?")

23             MR. CRAMER:  I think she's answered it.

24    Q    Yeah, she answered yes.

25             And looking further down in the third paragraph of

 1        Exhibit 3, Mr. Jonassen went on to allege that he was forced

 2        to sign a memorandum of understanding regarding a

 3        requirement that he obtain a Seattle Grade 2 boiler operator

 4        license, which, of course, he did obtain.  So he was

 5        complaining about being forced to do that, wasn't he?

 6   A    **Yes, he complained about that.**

 7   Q    Because if you read the next paragraph, he felt he was being

 8        treated differently than Dana Ruffner in that regard; isn't

 9        that correct?

10   A    **Yes, he did.**

11   Q    And Mr. Jonassen went on to complain in the fifth paragraph

12        about a counseling that Randy Sweet had issued to him in

13        February 2006; isn't that correct?

14   A    **Yes, he did note that.**

15   Q    And then in the next paragraph Mr. Jonassen specifically

16        alleged that Randy lied pursuant to the November 2000

17        Loudermill hearing; isn't that correct?

18   A    **Yes, he did.**

19   Q    And he also alleged that three other coworkers left the

20        treatment plant because his concerns were legitimate and

21        they had been instructed not to talk to him?

22            MR. CRAMER:  Objection, misstates what the document

23        says.  You can answer.

24            THE WITNESS:  Would you repeat the question?

25   Q    Yes.  I'll ask her to re-read it.

1              (The record was read by the reporter as follows:

2         "Question:  And he also alleged that three other coworkers

3         left the treatment plant because his concerns were

4         legitimate and they had been instructed not to talk to

5         him?")

6              MR. CRAMER:  Same objection.

7              THE WITNESS:  He told me that he recently found out

8         that three coworkers who left the treatment plant that his

9         concerns were legitimate.

10   Q    And then earlier on in that paragraph he felt that he had

11        inappropriately been removed from the treatment plant in

12        November of 2007; isn't that correct?

13   A    **He states that in November of 2007 Randy removed him from**

14        **the treatment plant due to poor work performance based on,**

15        **in part, on issues contained in the 2006 written warning.**

16   Q    He also stated in the last paragraph on that first page of

17        the exhibit that he had complained about harassment to Paul

18        Price and Gary Schmitt prior to complaining about this to

19        you on April 25th; is that correct?

20   A    **He stated that he had sent an e-mail, but wasn't sure when,**

21        **to Paul Price and Gary Schmitt alleging harassment but**

22        **nothing was done.**

23   Q    But certainly that would have occurred before the April

24        25th, 2008, phone call, correct?

25   A    **I expect so.**

1    Q    Now, going to the second page, the second paragraph, you

2         state, quote, We reviewed confidentiality isn't guaranteed

3         but that I will try to keep the information confidential to

4         the extent possible."  What did you mean by that?

5    A    **That I would try to keep the information he shared with me**

6         **confidential to the extent possible.  If I needed to consult**

7         **with Port counsel, I would do so to discuss it or I may give**

8         **an update to my manager to explain to her why I'm going out**

9         **to the airport to meet with Mr. Jonassen.**

10   Q    Did you relay Mr. Jonassen's concerns to Port counsel?

11   A    **I don't recall.**

12   Q    Now, the last paragraph states that, quote, He relayed

13        concerns about retaliation, end quote.

14             That sentence implies to me that throughout his

15        conversation with Mr. -- throughout your conversation with

16        Mr. Jonassen he was complaining about retaliation; is that

17        correct?

18   A    **He relayed concerns about retaliation in this conversation**

19        **with me.**

20   Q    And he specifically mentioned Randy Sweet?

21   A    **He referenced several people, including Randy Sweet.**

22   Q    Who else did he reference?

23   A    **He mentioned Omayio, Tom Hubbard, Dave Sergeant, Dana**

24        **Ruffner.**

25   Q    And, in fact, in the issue with Dana Ruffner, he was

```
 1        complaining that he was held to a standard that Dana Ruffner
 2        was not; isn't that correct?
 3               MR. CRAMER:  Objection, misstates what it says.
 4               THE WITNESS:  He referenced Dana Ruffner in
 5        reference to the Grade 2 -- Seattle Grade 2 license.
 6   Q    Wasn't he essentially complaining about a disparate
 7        treatment between him and Dana Ruffner in regards to the
 8        Grade 2 license requirement?
 9   A    He was complaining about different treatment.
10   Q    Okay.  Let's go on to Exhibit 4.
11               MR. CRAMER:  We've been going for about an hour.
12                                        (Off the record.)
13                                        (Recess taken.)
14   Q    Okay.  I'm going to ask you what's been marked as Exhibit 4,
15        can you describe that document?
16   A    Yes.  This -- these are my typewritten notes from an intake
17        meeting with Tracy Jonassen dated April 30th, 2008.
18   Q    And, in fact, this was a continuation of the phone
19        conversation from April 25th as described in Exhibit 3; is
20        that correct?
21   A    Yes, it is.
22   Q    And it's a more detailed recitation of the facts that he
23        alleged; isn't that correct?
24               MR. CRAMER:  Take your time to review it if you
25        like.
```

 1                THE WITNESS:  Yes.

 2   Q    And, in fact, this document summarizes the complaints that

 3        you memorialized during the April 30th, 2008, meeting with

 4        Mr. Jonassen?

 5   A    **This document memorializes the information he shared with**

 6        **me, yes.**

 7   Q    And he specifically complained that Randy Sweet was

 8        retaliating against him, didn't he?

 9                MR. CRAMER:  Are you referring to a specific

10        sentence in the notes?

11                MR. CLOUD:  No.  I'm just --

12   Q    I mean, the substance of this document clearly indicates

13        that Mr. Jonassen was complaining that he was being

14        retaliated against by Mr. Sweet, correct?

15                MR. CRAMER:  Objection, form.

16                THE WITNESS:  He complained about Mr. Sweet.

17   Q    And issues pertaining to Mr. Sweet would essentially

18        constitute retaliation; isn't that correct?  He was

19        complaining about retaliation?

20   A    **He was complaining about retaliation.  I was trying to find**

21        **out from him the type of retaliation that he was, in fact,**

22        **alleging, whether or not it was an unlawful sort of**

23        **retaliation, of retaliation for participating in an**

24        **investigation.  So alleging retaliation in and of itself is**

25        **not enough for me to proceed with action.**

1    Q    All right.  So what action did you take after this meeting?

2    A    **Well, during the meeting, I reviewed a document that he had**

3         **shared with me which he was alleging that he had e-mailed**

4         **Gary Schmitt and Paul Price and alleged harassment.**

5    Q    And did you discuss that document with him?

6    A    **Yes, we reviewed it together.**

7    Q    So he was alleging harassment?

8    A    **He was -- no, he wasn't, in fact.  He shared with me the**

9         **document, the e-mail.  And contrary to what he had told me,**

10        **he did not in the e-mail allege harassment.**

11   Q    Did he allege harassment with you?

12            MR. CRAMER:  Objection, vague.

13            THE WITNESS:  He alleged that he was being treated

14        differently, being mistreated.  I'm trying to look to see if

15        he specifically alleged harassment.  I don't recall that he

16        did so in that conversation.  In fact, Tracy acknowledged

17        that he was unaware of Randy saying anything or behaving in

18        any way after the Sarju investigation that indicated he had

19        any bias towards Tracy.

20   Q    Well, he was alleging continued retaliation since that time.

21        Let's go back to Exhibit 3, please.

22            It says on the -- in the first two paragraphs,

23        "Tracy alleges that he's being retaliated against since the

24        Omayio incident.  Randy Sweet replaced Tom Hubbard as

25        manager."  He is essentially alleging Randy Sweet is

 1          retaliating against him, wasn't he?

 2     A    **No.**

 3     Q    I'm asking you to look at Exhibit 3.

 4     A    **He is alleging that he has been retaliated against, yes.  He**

 5          **calls out Randy Sweet, but he gave him a 2006 written**

 6          **counseling.  He alleges that Randy lied at the Loudermill.**

 7     Q    Right.  So but he said that he's been retaliated since the

 8          Omayio incident, and that implies that it's continuing,

 9          isn't it?

10                    MR. CRAMER:  Objection, foundation, calls for

11          speculation.

12                    THE WITNESS:  No.

13     Q    You don't think it implies that?

14     A    **Perhaps I misunderstood your question.**

15     Q    Okay.  Let's go back to Exhibit 4.  You're going to tell me

16          that this document does not constitute a complaint of

17          retaliation?  Is that what you are telling me?

18                    MR. CRAMER:  Objection, argumentative, foundation,

19          form.

20                    THE WITNESS:  What I'm saying is that when I met

21          with Mr. Jonassen, I met with him to review in depth his

22          allegations of retaliation to determine whether or not it

23          was appropriate to investigate, as he was alleging, an

24          unlawful sort of discrimination, an unlawful sort of

25          retaliation.

```
1    Q    But he was alleging that, was he not, that this was

2         unlawful?

3    A    No.

4    Q    You don't think he was?

5    A    According to my notes, he acknowledged that as well.

6    Q    Where in your notes?

7    A    There are two places.  One, on page 2, bottom last

8         paragraph.

9    Q    Yes.

10   A    "He states that he believes because he was interviewed by

11        Dave Sarju as part of the Omayio/Hubbard investigation Randy

12        has held this against him."  He acknowledged he's unaware of

13        Randy saying anything or behaving in any way to indicate he

14        had any objections or concerns about Tracy's participation

15        in the investigation.

16   Q    Please read the last full sentences, the last full sentence

17        in that paragraph on page 2, please.

18   A    "He also acknowledges that although there were several

19        others interviewed by Sarju as part of the investigation, he

20        is the only one allegedly targeted by Randy."

21   Q    So, in other words, he's alleging that he was targeted by

22        Randy as a result of the Sarju investigation, correct?

23   A    That's not how I'm reading it, no.

24   Q    How are you reading it?

25   A    That there were several people besides him who were
```

1          interviewed as part of the Sarju investigation and Randy

2          only targeted him.

3     Q    Right.  So he's saying that he was targeted by Randy as a

4          result of the Sarju investigation, correct?

5                    MR. CRAMER:  Objection, asked and answered.  Go

6          ahead.

7                    THE WITNESS:  No.  That's not how I recall.

8     Q    You've got to be kidding.  Please explain that.

9                    MR. CRAMER:  Objection, argumentative.  Please

10         rephrase your question.

11                   MR. CLOUD:  I want her to explain that conclusion.

12         It's absurd.

13                   MR. CRAMER:  Objection, argumentative.

14                   THE WITNESS:  Well, if you go to the next sentence,

15         "He attributes the difference in treatment to be because he

16         is the only one who challenges Randy about plant operational

17         issues."

18    Q    All right.  So you read it that way.  But in any event, he's

19         complaining about retaliation pursuant to the Sarju

20         investigation and about his complaints about plant

21         operational problems, correct?

22                   MR. CRAMER:  Objection, compound, misstates

23         testimony.

24    Q    Is that correct or not?

25                   MR. CRAMER:  Same objections.

```
 1                 THE WITNESS:  I don't understand your question.

 2    Q    Okay.  In that paragraph that you cited that runs from page

 3         2 to page 3, it clearly says that Tracy was complaining

 4         about retaliation because he challenges Randy about plant

 5         operational problems, correct?

 6                 MR. CRAMER:  Mr. Cloud, lower your voice.

 7                 THE WITNESS:  Yes.

 8    Q    All right.  And he also complained that he was being

 9         targeted by Mr. Sweet as a result of the Sarju

10         investigation, correct?

11                 MR. CRAMER:  Asked and answered.

12                 THE WITNESS:  No.

13    Q    No?

14    A    No.

15    Q    All right.  Just please read that last sentence in page 2.

16    A    "He also acknowledges that although there were several

17         others interviewed by Sarju as part of the investigation, he

18         is the only one targeted by Randy."

19    Q    All right.  What does that mean to you?

20    A    It meant to me that he was saying there was possibly another

21         reason for Randy targeting him, not the Sarju investigation.

22    Q    But your earlier notes from Exhibit 3 imply that he was

23         being targeted since the Omayio investigation?

24                 MR. CRAMER:  Objection, asked and answered several

25         times now.
```

```
 1   Q    So, therefore, there seems to be a contradiction in your

 2        conclusion as stated in the paragraph at the bottom of page

 3        2.  Please explain that contradiction.

 4             MR. CRAMER:  Objection, form.

 5             THE WITNESS:  I don't see it as a contradiction but

 6        a clarification obtained with additional information

 7        provided by Mr. Jonassen.

 8   Q    We respectively disagree.

 9   A    Okay.

10             MR. CRAMER:  Move to strike.  It's not a question.

11   Q    What obligation do you have to testify truthfully today

12        under the court's -- or under the Port's ethics policy?

13   A    Would you repeat that?

14   Q    Yes.  Don't you have an obligation to testify truthfully

15        today?

16   A    Yes.

17   Q    And, in fact, you are not here to shade the truth, are you?

18             MR. CRAMER:  Objection, form, argumentative.

19             THE WITNESS:  I'm here to tell the truth.

20   Q    It seems to me that you're not telling the truth and so

21        therefore I'm asking you to explain the contradiction

22        between Exhibit 3 and Exhibit 4.

23             MR. CRAMER:  Mr. Cloud, that is a completely

24        improper question.  You've asked it and answered it --

25        you've asked it several times, she's answered it several
```

1      times.  She's told you she's telling the truth.  Please move

2      on.

3                    MR. CLOUD:  No.  I don't see how she can sit here

4      and tell me that he was not complaining about retaliation

5      pursuant to the Omayio incident when the document clearly

6      says otherwise.

7                    MR. CRAMER:  Mr. Cloud, she has answered your

8      question.

9                    MR. CLOUD:  No, she hasn't.

10                   MR. CRAMER:  Mr. Cloud, she has answered your

11     question.

12                   MR. CLOUD:  I'm going to ask the questions, please.

13  Q   Let's go back to Exhibit 3, please.  Please read the first

14     paragraph of Exhibit 3.

15  A   **"He alleges that since he spoke to Dave Sarju, the**

16     **investigator of Omayio's complaint, his pay was reduced and**

17     **he was forced to sign an MOU regarding requirement he obtain**

18     **his Seattle Grade 2 boiler operator license which he**

19     **obtained in 2006."**

20  Q   Please read the first paragraph of Exhibit 3.

21                   MR. CRAMER:  You mean the first line?

22                   THE WITNESS:  You mean the first line?

23  Q   Yeah, paragraph.

24  A   **"Tracy alleges that he's being retaliated against since the**

25     **Omayio incident."**

1  Q    Okay.  And so in that paragraph he specifically told you

2       that he felt that he was being retaliated against and in the

3       second paragraph he indicates that it's Randy Sweet who is

4       retaliating against him, correct?

5            MR. CRAMER:  Objection, asked and answered several

6       times now.  Misstates what the document says.

7  Q    Yes?

8  A    **In the second paragraph, he identifies Randy Sweet as**

9       **replacing Tom Hubbard.**

10 Q    Now, let's go back to the last paragraph on Exhibit 4, page

11      2.  Please read the first sentence.

12 A    **"Tracy adds that he thinks the deal with Omayio was a big**

13      **issue."**

14 Q    And in that sentence he was relating that he felt that he

15      was still being retaliated against as he alleged in the

16      April 25th, 2008 interview; isn't that correct?

17           MR. CRAMER:  Objection, foundation.

18           THE WITNESS:  It reflects what he said to me.

19 Q    So that sentence is consistent with the first sentence of

20      Exhibit 3, is it not?

21 A    **It is consistent.**

22 Q    All right.  Now, also let's go down to the last full

23      sentence at the bottom of page 2.  Please read that.

24 A    **"He also acknowledges that although there were several**

25      **others interviewed by Sarju as part of the investigation, he**

 1          is the only one allegedly targeted by Randy."

 2     Q    And, in fact, that is consistent with his statements as

 3          reflected in your notes on Exhibit 3 in the first two

 4          paragraphs; isn't that correct?

 5               MR. CRAMER:  Objection, asked and answered several

 6          times now.  Her answer is her answer.  Please move on.

 7     Q    Please answer the question.

 8     A    Would you repeat it?

 9     Q    Yes.

10               MR. CLOUD:  Please repeat it.

11          (The record was read by the reporter as follows:

12          "Question:  And, in fact, that is consistent with his

13          statements as reflected in your notes on Exhibit 3 in the

14          first two paragraphs; isn't that correct?")

15               THE WITNESS:  No.

16     Q    How is it not consistent?

17               MR. CRAMER:  Same objections.  We've been over

18          this.

19               THE WITNESS:  That he was providing additional

20          information to me explaining that there was -- there were

21          others like him who were involved in the Omayio

22          investigation and they were not being targeted.

23     Q    So he was being treated differently?

24     A    Yes.

25     Q    And so, in other words, he's saying that he was being

1          retaliated against by Mr. Sweet, correct?

2                    MR. CRAMER:  Objection, form, foundation.

3                    THE WITNESS:  No.

4    Q    What do you think that he was saying here?  Please explain.

5          You've got me completely mystified.

6                    MR. CRAMER:  Objection, argumentative.  Please stop

7          badgering the witness.

8                    THE WITNESS:  There are many, many reasons why an

9          individual might be treated differently, including

10         retaliation.  What I understood him to be saying to me was

11         that he was attributing the difference to treatment between

12         him and the others who were involved in the Sarju

13         investigation that he was being singled out because he was

14         the only one who was challenging Randy about the plant

15         operations.

16   Q    Okay.  Let's go on to the first paragraph of page 3 of the

17         exhibit.  Please read that, and then I will ask you to

18         explain that.  Please read it into the record.

19   A    **"With regard to his conflicted working relationship with**

20         **Randy, Tracy states I have a manager who doesn't like it**

21         **when I tell him about operational issues done wrong, when I**

22         **find broken valves, when I tell him things are not working**

23         **correctly, that's when I get reprimanded for not doing my**

24         **job."**

25   Q    So, in effect, Tracy was complaining that he was raising

 1          issues about the plant to Randy and Randy was retaliating

 2          against him; is that correct?

 3                    MR. CRAMER:  Objection, form, misstates testimony,

 4          assumes facts.

 5                    THE WITNESS:  Randy was targeting him because of

 6          him calling out operational issues in the plant, yes.

 7     Q    And let's go on to the next paragraph.  What does that

 8          paragraph pertain to in regards to your conversation with

 9          Mr. Jonassen?

10     A    **Tracy was sharing with me that there was a construction**

11          **error.  He was alleging there was a construction error with**

12          **the lagoon construction that Randy was responsible for.**

13     Q    So, in other words, he was alleging that Randy had a motive

14          to cover up his error?

15                    MR. CRAMER:  Objection, assumes facts, misstates

16          testimony, form.

17                    THE WITNESS:  Would you repeat that, please.

18     Q    Yes.  He was alleging that Randy was covering up his errors?

19                    MR. CRAMER:  Same objections.

20                    THE WITNESS:  He was stating that Randy did not

21          want to address this as a legitimate issue.

22     Q    Now, he specifically in the next paragraph said that he

23          was -- or he mentioned fraud, correct?

24     A    **I'm trying to read it.  He stated "I'm mad because I'm**

25          **covering up fraud."**

1    Q    Meaning you were covering up fraud?

2              MR. CRAMER:  Objection, form.

3    Q    Is that correct?  Who's "I'm covering up fraud"?  Is it

4         Tracy or is it Cynthia Alvarez in your notes?

5    A    **It's Tracy.**

6    Q    Okay.  And he identified to you the fraud related to water

7         treatment issues not being appropriately reported to the

8         Department of Ecology; is that correct?

9    A    **Yes.**

10   Q    And, in fact, reporting these issues was -- to you was an

11        appropriate way for him to report these issues, correct?

12             MR. CRAMER:  Objection, vague.

13             THE WITNESS:  I don't know.  But I made sure to

14        give him the contact information for the Department of

15        Ecology as well as the whistleblower hot line so that he

16        could bring forth those concerns.

17   Q    But you told me earlier in your testimony that an employee

18        could bring his concerns to supervisors, to the Department

19        of Ecology directly, to The Port counsel, et cetera, that

20        all were appropriate manners of doing so; isn't that

21        correct?

22             MR. CRAMER:  Objection, misstates testimony.

23             THE WITNESS:  He -- would you please repeat the

24        question?

25   Q    You told me earlier in your testimony that reporting fraud

1          to a supervisor or a management personnel was an appropriate

2          way of reporting government misconduct, correct?

3                    MR. CRAMER:  Same objections.

4                    THE WITNESS:  Yes, I did say that.

5     Q    And so, therefore, this report to you that he was

6          investigating fraud was an appropriate way for him to report

7          government misconduct, correct?

8                    MR. CRAMER:  Same objections, foundation.

9                    THE WITNESS:  It was not my understanding he was

10         reporting fraud.

11    Q    You related his concerns about fraud to whom?

12    **A    To -- I believe I spoke to Gary Schmitt, but I know that I**

13         **spoke to John Christianson, the general manager of**

14         **maintenance.**

15    Q    So what did you tell Gary Schmitt about Mr. Jonassen's

16         allegations of fraud?

17    **A    Do you have my notes?**

18    Q    You can review any of these documents, if you need to, in

19         answering any of the questions.  And take your time in doing

20         so.

21                   MR. CRAMER:  Let's go off while she looks at the

22         documents.

23                                      (Off the record.)

24    Q    And just I ask that when you do refer to a specific document

25         you identify it by number.

```
 1   A      I'm looking at Exhibit 9.

 2   Q      May I see it real quick?

 3   A      (Witness complies.)

 4   Q      Okay.  I've got it.  Thank you.

 5          Is this when you discussed the issues of fraud

 6   raised by Mr. Jonassen with Mr. Schmitt?

 7   A      I spoke to Mr. Schmitt on May 6, 2008.  I reviewed Tracy's

 8   concerns with Gary.  We discussed -- Gary shared with me his

 9   recollection of the Loudermill that took place in November

10   of 2007.

11   Q      Okay.  So Mr. Schmitt did nothing, did he?

12          MR. CRAMER:  Objection, foundation, form.

13          THE WITNESS:  Mr. Schmitt supported me going to

14   John Christianson to relay Tracy's allegations of water

15   treatment concerns reporting to the Department of Ecology.

16   Q      And did Mr. Schmitt explain to you how he felt that Randy

17   explained Tracy's alleged mistakes?

18   A      Mr. Schmitt stated that Randy at the Loudermill was able to

19   clearly articulate how Tracy's mistakes created tremendous

20   liabilities for The Port.

21   Q      Did you tell Mr. Schmitt that Tracy had alleged to you that

22   Randy had lied at the Loudermill hearing?

23   A      I believe so.

24   Q      So Mr. Schmitt knew that Tracy said that Mr. Sweet had lied

25   at the Loudermill hearing?
```

```
 1   A     I relayed Tracy's concerns, which included his allegation

 2         that Randy lied during the Loudermill hearing.

 3   Q     And did you or Mr. Schmitt or Mr. Christianson investigate

 4         in any way Mr. Jonassen's allegations that Randy Sweet had

 5         lied at the Loudermill hearing?

 6               MR. CRAMER:  Objection, form, foundation.

 7               THE WITNESS:  I did not investigate that.

 8   Q     So you're not aware of anybody investigating those

 9         allegations of Mr. Sweet lying at the Loudermill hearing,

10         are you?

11   A     I'm unaware if others did so.

12   Q     And so, therefore, despite the fact that had Randy lied at

13         the Loudermill hearing, that would have been, according to

14         your testimony, a violation of the code of conduct and the

15         ethics policy of The Port, there was no investigation to

16         your knowledge done into Mr. Jonassen's allegations that Mr.

17         Sweet had lied, correct?

18               MR. CRAMER:  Objection, form, foundation, misstates

19         testimony.

20               THE WITNESS:  Mr. Jonassen had the opportunity to

21         appeal his discipline to raise that allegation in November,

22         which he did not do.

23   Q     Well, you already told me the handbook and the ethics

24         policies and the code of conduct are independent of the

25         collective bargaining agreement, correct?
```

```
 1                    MR. CRAMER:  Objection, form, misstates testimony.
 2   Q    Isn't that correct?
 3   A    Yes, it is.
 4   Q    So, therefore, there was a whole different avenue that Mr.
 5        Jonassen was complaining about in addition to those actions
 6        that took place under the collective bargaining agreement,
 7        i.e., the Loudermill hearing, correct?
 8                    MR. CRAMER:  Same objections, form, foundation.
 9                    THE WITNESS:  I'm sorry, I don't understand your
10        question.
11   Q    He was complaining about two things, violations of the
12        ethics policies and violation of the -- or, yeah, he was
13        complaining about violations of the ethics policy, was he
14        not?
15                    MR. CRAMER:  Same objection.
16                    THE WITNESS:  He was complaining about the
17        discipline from 2007 that a manager had lied during a
18        Loudermill hearing.
19   Q    Right.  And if a manager had lied during a Loudermill
20        hearing, it was a violation of the ethics policy.  You've
21        already told us that, correct?
22                    MR. CRAMER:  Objection, misstates testimony.
23   Q    Yes or no?
24   A    Yes.
25   Q    And so, therefore, had Randy lied at the Loudermill --
```

1              MR. CRAMER:  Mr. Cloud, please lower your voice.

2              MR. CLOUD:  Well, if she's going to be cagey, I'm

3     going to get a little exercised occasionally.  Okay?

4              MR. CRAMER:  Mr. Cloud, she's not being cagey --

5              MR. CLOUD:  Oh, bull.

6              MR. CRAMER:  -- she's answering your questions.

7     I'd ask that you treat the witness with dignity and

8     politely.

9              MR. CLOUD:  I ask that she answer truthfully, and I

10    don't believe that she is.

11             MR. CRAMER:  Mr. Cloud, please.

12             MR. CLOUD:  This is cross-examination or the

13    equivalent of same, and she might as well get used to it.

14    Q    So, therefore, nothing was done about Mr. Jonassen's

15         complaints of ethics violations involving Mr. Sweet lying at

16         the Loudermill hearing, was there, to your knowledge?

17    **A    I don't know.**

18    Q    You don't know what?

19    **A    I don't know if any action was taken.**

20    Q    All right.  Thank you.

21             So as far as you know, there was no investigation

22    whatsoever about Mr. Sweet lying at the Loudermill hearing?

23             MR. CRAMER:  Objection, assumes facts, speculation.

24             THE WITNESS:  I don't know if an investigation was

25    conducted.

1              MR. CRAMER:  Same objection.

2              THE WITNESS:  No.

3    Q    Please read the sentence that starts about two-thirds of the

4         way down the page, please.

5              MR. CRAMER:  What does the sentence begin with?

6              MR. CLOUD:  "Tracy states."

7              THE WITNESS:  "Tracy states he considers it to be

8         HR's obligation to address Sweet lying.  Explained to Tracy

9         that he had opportunity to present facts to support alleged

10        lying during grievance which he chose not to pursue."

11   Q    So, in other words, you chose not to investigate the

12        allegation that Mr. Sweet lied?

13   A    **I chose not to do so.**

14   Q    Despite the fact that you earlier stated that such behavior

15        would have been a violation of the ethics policy?

16             MR. CRAMER:  Objection, misstates earlier

17        testimony.

18   Q    Correct?

19   A    **It does not consider the particular facts of this case.**

20   Q    Well, I guess that will be up to a jury, won't it?

21             MR. CRAMER:  Objection.  Move to strike.  You need

22        to stop arguing with the witness, and you need to stop

23        badgering the witness.

24             MR. CLOUD:  She needs to stop lying.

25             MR. CRAMER:  Mr. Cloud, if you continue with this,

```
 1              So these are all fair game.

 2                   MR. CRAMER:  Ask your questions, Doug, and we will

 3         answer the questions.

 4    Q    All right.  Please go to Exhibit 5.  Please describe that

 5         document.

 6                   MR. CRAMER:  We'll object to the fact that portions

 7         of it are illegible.

 8    Q    To the extent that you can identify the document, please

 9         describe the document.

10    A    This appears to be a document that Tracy Jonassen gave me on

11         April 30th, 2008.

12    Q    And you received this in person?

13    A    Yes.

14    Q    What did you do with the document?

15    A    I reviewed it with Tracy.

16    Q    And what did you do in terms of transmitting the information

17         contained in the document to other managers or Port

18         personnel?

19    A    Issues that he raised here seemed to be consistent with what

20         he was telling me in our meeting.

21    Q    Did that document get transmitted to any other management

22         personnel at The Port of Seattle?

23                   MR. CRAMER:  Objection, foundation.

24                   THE WITNESS:  I don't know.

25    Q    And it was appropriate for Mr. Jonassen to raise those
```

```
 1              concerns that he raised in Exhibit 5 with you; isn't that
 2              correct?
 3      A       It was appropriate for him to bring forth concerns to HR&D.
 4      Q       Now let's go on to Exhibit 6.  Please tell us what that is.
 5      A       These are my typewritten notes from a phone call from Tracy
 6              Jonassen dated January 14th, 2010.
 7      Q       And is this document kept in the ordinary course of business
 8              by The Port of Seattle?
 9      A       I don't understand your question.
10      Q       Is this a business record that you created?
11      A       Yes.
12      Q       And it would be kept in the ordinary course of business in
13              the records of The Port of Seattle; is that correct?
14                      MR. CRAMER:  Objection, foundation.
15                      THE WITNESS:  It was kept in my file.
16      Q       And you are the custodian of the record?
17      A       Yes.
18      Q       Thank you.  Okay.  Let's go on to Exhibit 7, please.  Please
19              identify that document.
20      A       This is a file contact sheet that is kept in my file on the
21              left-hand side and this is the file contact sheet for Tracy
22              Jonassen.
23      Q       Now, you reference at "5/6/08, meeting with Gary Schmitt,
24              see notes."  What notes are you referring to?
25      A       Exhibit 9, those notes.
```

1    Q    Were there any other notes that you were referring to?

2    A    No.

3    Q    Now, "phone call to Tracy Jonassen," below the entry about

4         Gary Schmitt, "see notes."  What notes were you referring

5         to?

6              MR. CRAMER:  5/8/08?

7              MR. CLOUD:  Yes.

8              THE WITNESS:  They're also part of Exhibit 9, the

9         third page.

10   Q    Okay.  And are there any other notes that you're referring

11        to in Exhibit 7?

12   A    In referring to Exhibit 7, no.

13   Q    And you say "phone call to John Christianson, left voicemail

14        for call back."  Did you ever get a call back from Mr.

15        Christianson?

16   A    No.  But I called him back the following day.

17   Q    And what did you discuss?  Is that related in the 5/9/08

18        note?

19   A    Yes.

20   Q    Do you recall anything in addition that you discussed that

21        is not contained within the 5/9/08 note?

22   A    No.

23   Q    So you have no independent recollection of the conversation

24        other than that that exists in the 5/9/08 note?

25   A    Yes.

1    Q    How long did the conversation last?

2    **A**    **I don't know.**

3    Q    Now please identify Exhibit 8.

4    **A**    **This is a Memo of Understanding between The Port of Seattle**

5         **and the International Union of Operating Engineers Local 286**

6         **regarding Tracy Jonassen.**

7              MR. CRAMER:  I'll object to the foundation to the

8         extent there's no record of the witness ever having seen

9         this.

10   Q    Can you identify this document of your own personal

11        knowledge?

12   **A**    **No.**

13   Q    We will not ask any further questions about it, then.  You

14        can put it aside.

15              At what point did you understand that Mr. Jonassen

16        had brought a false claims lawsuit against The Port?

17              MR. CRAMER:  Objection, assumes facts.

18              THE WITNESS:  I'm not sure.  It may be in my file.

19        One of our attorneys --

20              MR. CRAMER:  I'll instruct you not to disclose

21        communications between Port of Seattle counsel and yourself.

22        You can testify to time and that type of thing, but no

23        detailed testimony regarding the contents of the

24        communication.

25   Q    Okay.  Do you recall the time frame you learned about the

```
 1          false claims lawsuit?  That was what I was seeking, by the

 2          way.

 3     A    I had no knowledge of the type of lawsuit.

 4     Q    When did you first hear that Tracy had filed a lawsuit

 5          against The Port?

 6     A    I believe it was January of 2010.

 7     Q    And do you recall how you were informed of that information?

 8     A    I received an e-mail from Port attorney.

 9     Q    Now let's go back to the -- your role in the Banomi

10          incident, and I understand that you've been instructed in

11          certain areas not to answer and so I'm going to ask you to

12          give your counsel an opportunity to intercede on these

13          questions for objections and appropriate response because I

14          have to make a record.  Okay?

15                    What did you do during the investigation of the

16          Banomi and Moikobu investigation?  What was your role?

17                    MR. CRAMER:  You can answer to the extent that it

18          doesn't get into the contents of discussions you had or

19          findings you made.

20                    THE WITNESS:  My role was to investigate the

21          allegations.

22     Q    And is that the role that you did take?

23     A    Yes.

24     Q    And who did you report to?

25     A    My findings were reported to The Port general counsel.
```

```
 1        but not to any mental impressions or findings that you had.

 2                   MR. CLOUD:  So is she going to answer that?

 3                   MR. CRAMER:  Restate your question.

 4             (The record was read by the reporter as follows:

 5        "Question:  Did you conclude that Mr. Moikobu had been a

 6        victim of racial discrimination or national origin

 7        discrimination in connection with Mr. Banomi being placed in

 8        the position in which he was placed?")

 9                   MR. CRAMER:  And the instruction is to the extent

10        you can answer the question based on the ultimate result of

11        the investigation, you're free to do so.  You're not to

12        testify to your mental impressions or findings during the

13        investigation.

14                   THE WITNESS:  I recommended that Mr. Moikobu be

15        employed in the position.

16   Q    Was that recommendation followed?

17   A    Yes.

18   Q    So then did you conclude that Mr. Moikobu had been a victim

19        of racial discrimination or national origin discrimination

20        in connection with the position that Mr. Banomi filled?

21                   MR. CRAMER:  And I will instruct the witness not to

22        answer.

23   Q    What was Marjorie Hillson's role in investigating or dealing

24        with Tracy Jonassen's complaints, if any?

25   A    In 2010 I understand that Marjorie worked with Tracy for --
```

```
 1              to address his concerns.

 2    Q    And who is Marjorie Hillson?

 3    A    Marjorie Hillson is a senior leader with the -- with human

 4         resources and development.  At that time, she was my

 5         manager.

 6    Q    And where is she now in the hierarchy?

 7    A    She is deputy HR director.

 8    Q    Was that a promotion?

 9    A    Recent, yes.

10    Q    And what role did she have in the Jonassen matter to your

11         knowledge?

12    A    I understand that she addressed Mr. Jonassen's concerns.

13    Q    How do you understand that?

14    A    Because I gave her a copy of my file so that she could work

15         with Mr. Jonassen.

16    Q    Did you discuss Mr. Jonassen's issues with Ms. Hillson?

17    A    I don't recall a specific conversation.

18    Q    How did you come to give her your file?

19    A    I shared with her my conversation with Tracy in January and

20         asked her to -- if she had capacity to take it on.

21    Q    Did you withdraw from the Jonassen issue at that point?

22    A    Yes.

23    Q    Why was that?

24    A    Workload issues.

25    Q    So please state all reasons that you asked off of the
```

1          Jonassen issues or off the Jonassen case?

2                    MR. CRAMER:  Objection, form.

3                    THE WITNESS:  Workload issues.

4     Q    How much impact on your workload was Mr. Jonassen's case

5          presenting?

6     A    **I don't know.**

7     Q    Why was his case chosen by you in your request for relief

8          from your workload?

9                    MR. CRAMER:  Objection, misstates the testimony.

10                   THE WITNESS:  It was a new issue, so I asked my

11         manager if she had capacity to meet with Mr. Jonassen,

12         address his concerns.

13    Q    And so then you transferred at that time your entire file?

14    A    **Yes.**

15    Q    Did she at that point assume total responsibility from you

16         in regards to Mr. Jonassen?

17    A    **I don't understand your question.**

18    Q    Okay.  Let me try to think about a way to restate it.

19                   Was all your responsibility in relating to Mr.

20         Jonassen terminated at the time your file was transferred to

21         Ms. Hillson?

22                   MR. CRAMER:  Objection, form.

23                   THE WITNESS:  She was taking the lead on it.

24    Q    Did you have any further input or work on the file or the

25         issues pertaining to Ms. Jonassen's case after Ms. Hillson

1          took over the file?

2     A    I believe that I had had one additional phone call from Mr.

3          Jonassen sometime after I had given the file to Marjorie

4          Hillson.

5     Q    Do you recall the nature of the phone call?

6     A    No.  But may I look at my notes?

7     Q    You can always look at your notes.

8               MR. CRAMER:  And I've directed the witness to

9          Exhibit 6.

10              MR. CLOUD:  Let the record reflect that the witness

11         is evaluating Exhibit 6.

12              THE WITNESS:  These are my notes from a phone call

13         from Mr. Jonassen dated January 14, 2010.

14    Q    Is this the last item of work that you did on the Jonassen

15         case?

16              MR. CRAMER:  Objection, form.

17              THE WITNESS:  I believe so, yes.

18    Q    So you had no further time spent in evaluating or dealing

19         with Mr. Jonassen's issues after the 14th of January of

20         2010?

21    A    Correct.

22    Q    Now, as I understand your testimony, you instigated the

23         transfer of the file to Ms. Hillson.  Am I correct in that

24         understanding?

25    A    I asked her to, yes.

 1    A    I'm not sure I understand your question.

 2              MR. CLOUD:  Please restate the question.

 3              (The record was read by the reporter as follows:

 4         "Question:  To your knowledge did the information that you

 5         shared and conveyed to Mr. Schmitt about Mr. Jonassen's

 6         complaints ever rise beyond Mr. Schmitt's level in the

 7         management hierarchy?")

 8    Q    So, in other words, I'm asking do you know if anybody at a

 9         level higher than Mr. Schmitt was in receipt of the

10         information that you had conveyed to Mr. Schmitt about Mr.

11         Jonassen's complaints?

12    A    I shared them with John Christianson, the general manager of

13         aviation maintenance.  I don't know the hierarchy, if he's

14         higher than Mr. Schmitt.

15    Q    I see.  All right.  Did you share it with anybody higher in

16         the hierarchy than Mr. Christianson and/or Mr. Schmitt?

17    A    I don't know.

18    Q    You don't recall?

19    A    I don't recall.

20    Q    Do you know what Mr. Schmitt and Mr. Christianson did after

21         receiving the information that you conveyed to them about

22         Mr. Jonassen?

23              MR. CRAMER:  Objection, compound.

24              THE WITNESS:  I don't know.

25    Q    Did you ever discuss the issues pertaining to Mr. Jonassen

1          with Mr. Schmitt and/or Mr. Christianson other than the

2          meetings you've already described?

3     A    **I don't know.**

4     Q    Is there any way of determining from a written or electronic

5          record if you did so?

6                    MR. CRAMER:  If you know.

7                    THE WITNESS:  I don't know.

8     Q    Do you keep track of your meetings during the day in which

9          you hold the meetings with other members of management?

10                   MR. CRAMER:  Objection, form, vague.

11                   THE WITNESS:  I keep notes of meetings as they're

12         pertaining to an employee issue or an investigation.

13    Q    So is there any calendaring that is done with your various

14         meetings or phone calls with other Port personnel during

15         your workday?

16    A    **If it's scheduled in advance, a meeting, then it's**

17         **calendared.  My unscheduled phone calls to someone or their**

18         **unscheduled phone call to me is not calendared.**

19    Q    How often do you memorialize phone conversations in written

20         records?

21                   MR. CRAMER:  Objection, vague.

22                   THE WITNESS:  I -- it's not an unusual occurrence

23         to memorialize a conversation in writing.

24    Q    I understand that.  But maybe I should ask you for an

25         estimate of what proportion of your phone calls or meetings

 1    Q    So, in other words, under no circumstances under The Port's

 2         ethics policy or code of conduct or anti-harassment policy

 3         or any other related policy is it acceptable for a manager

 4         to lie at a Loudermill hearing, is it?

 5              MR. CRAMER:  Objection, form, foundation.

 6              THE WITNESS:  It would be inappropriate for a

 7         manager to lie.

 8    Q    By withholding information or directing others to withhold

 9         information that would provide proof of an employee's

10         innocence in a charge brought by management, would that be a

11         violation of Port policy?

12              MR. CRAMER:  Objection, form, foundation, calls for

13         speculation.

14    Q    Do you understand the question?

15    **A    No.**

16    Q    Let me break it up.

17    **A    Please.**

18    Q    If a Port manager, in an attempt to influence an

19         investigation, directed others to withhold information that

20         would exculpate the employee, would that be a violation of

21         Port policy?

22              MR. CRAMER:  Objection, form, foundation, calls for

23         legal conclusion.

24              THE WITNESS:  It would be inappropriate for a

25         manager to do so.

```
 1   Q    Would that be a violation if it occurred of The Port's
 2        anti-harassment policy?
 3                   MR. CRAMER:  Same objections.
 4                   THE WITNESS:  Yes, it would.
 5                   MR. CLOUD:  May we have three or four minutes, and
 6        then I may not have any other questions.
 7                                        (Recess taken.)
 8   Q    Now I'm going to ask you questions of a more general nature
 9        about Port policy, and I may ask specific questions about
10        Mr. Jonassen, but for the time being these will be general
11        questions.  Okay?
12                   What is your understanding of Port policy in
13        regards to management procedure upon receiving a complaint
14        of a harassment nature?
15                   What are they supposed to do in general?  In
16        general, not specific to Mr. Jonassen?
17   A    Talk to someone in HR or workplace responsibility and relay
18        those concerns.
19   Q    And then what is HR supposed to do with those concerns?
20   A    HR, which works closely with legal and workplace
21        responsibility, would conduct an intake fact finding to
22        determine what the appropriate next steps are.
23   Q    Now, do you believe that any fact finding done in those
24        situations is subject to privilege as a result of your work
25        with legal?
```

 1                    MR. CRAMER:  What about them?

 2    Q    What obligations are owed to the complainant when they make

 3         a complaint that reaches HR related to harassment?

 4    A    **If HR determines with -- after consulting with legal and**

 5         **workplace responsibility and investigation is appropriate,**

 6         **investigation is conducted.  At the end of the**

 7         **investigation, the investigator has an exit interview with**

 8         **the complainant.**

 9    Q    To your knowledge were any of Mr. Jonassen's complaints ever

10         investigated by HR?

11                    MR. CRAMER:  Objection, vague as to investigated.

12                    THE WITNESS:  I do not believe a formal

13         investigation was conducted.

14    Q    Who made that decision not to conduct a formal investigation

15         in Mr. Jonassen's situation?

16                    MR. CRAMER:  Objection, foundation.

17                    THE WITNESS:  When?

18    Q    When Mr. Jonassen brought the complaints that you were aware

19         of to you.

20    A    **In 2008?**

21    Q    Yes.

22    A    **It was my decision not to proceed with an investigation.**

23    Q    Who had input into that decision besides yourself?

24    A    **I don't recall.**

25    Q    Did Mr. Christianson have some influence in your decision?

1          CHANGE AND SIGNATURE SHEET

2

3          I, the undersigned, CYNTHIA ALVAREZ, do hereby
certify that I have read the foregoing deposition and that,
4     to the best of my knowledge, said deposition is true and
accurate, with the exception of the following corrections
5     listed below:

6     PAGE                    LINE                    CHANGE

7     _____

8     _____

9     _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____
      Date                        Signature
23
      Case name:  Jonassen vs. Port of Seattle
24    Cause No.:  2:11-cv-00034-RAJ
      Date taken: February 16, 2012
25    Betsy Decater, CCR

```
 1                         CERTIFICATE

 2    STATE OF WASHINGTON )
                          )
 3    COUNTY OF KING      )

 4

 5              I, BETSY DECATER, a Certified Court Reporter and

 6    Notary Public in and for the State of Washington, do hereby

 7    certify that I reported in machine shorthand the deposition

 8    of CYNTHIA ALVAREZ, called as a witness at the instance of

 9    the Defendant, for purposes of discovery in the

10    above-entitled cause; that the subscribing of the completed

11    deposition by the witness was reserved; that the foregoing

12    transcript was prepared under my personal supervision and

13    constitutes a true record of the testimony of the said

14    witness.

15              I further certify that I am not an attorney or

16    counsel of any parties, nor a relative or employee of any

17    attorney or counsel connected with the action, nor

18    financially interested in the action.

19              WITNESS my hand and seal in Sammamish, County of King,

20    State of Washington, this 6th day of Febaruary, 2012.

21

22                         _____

23                         Notary Public in and for the
                           State of Washington, residing
24                         at Sammamish.

25                         My Commission expires 03-20-14
```