# Exhibit "1"

**TO DECLARATION OF TRACY JONASSEN IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANT PORT OF SEATTLE'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COMPLAINT**

**Jonassen, Tracy**

| | |
|---|---|
| **From:** | Hubbard, Tom |
| **Sent:** | Tuesday, October 19, 2004 9:12 AM |
| **To:** | Jonassen, Tracy; Moikobu, Omayio |
| **Cc:** | Audette, Al; Banomi, Tom; Ruffner, Dana; Watson, Tom |
| **Subject:** | RE: Contractor using Port Equipment |

Tracy:

Thanks for watching out for our equipment.  Tom Banomi is our liaison with URS. I have asked him to review the situation with them.  He should have an answer to your concerns by the end of the week.

Tom

> -----Original Message-----
> | | |
> |---|---|
> | **From:** | **Jonassen, Tracy** |
> | **Sent:** | Tuesday, October 19, 2004 5:46 AM |
> | **To:** | Moikobu, Omayio |
> | **Cc:** | Audette, Al; Banomi, Tom; Hubbard, Tom; Ruffner, Dana |
> | **Subject:** | RE: Contractor using Port Equipment |

Omayio,

In the last few months I have noticed the contractors using Port equipment rather frequently. I was not aware of any agreement that we may have established that would allow this practice.  Although the items they are using are of  little to no significant value I felt it necessary to voice my concern. Since the construction start I have noticed at least 6 IWTP garden hoses and a untold number of spray nozzles destroyed. The contractor is using the hoses to pump water and for fire and dust suppression. Unfortunately, the construction site is not a hose friendly environment and our "on hand" hose supply has run out. I have been finding myself looking around the construction site in order to locate our equipment. Tonight for example: I notices the hose that was located at the influent sample tap missing. I found it outside, at the work site by the generator.

I understand that we should try to accommodate the contractor. However, URS is a for profit organization that will do very well financially building this facility. Their use of our equipment is effecting the ability of the operators to perform their duties in a efficient manner and that in itself is unacceptable. The practice of URS using the IWTP equipment should be addressed as soon as possible and the damage equipment replaced.

Tracy

1

00789

# Exhibit "2"

**TO DECLARATION OF TRACY JONASSEN IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANT PORT OF SEATTLE'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COMPLAINT**

# WHISTLEBLOWER POLICY: REPORTING OF IMPROPER GOVERNMENTAL ACTION

## EX-13 as of 12/8/08

Original: 7/1/91; Revisions: 3/20/97

## I. STATEMENT OF THE POLICY:

This policy is created 1) to guide Port employees in the reporting of activities or matters suspected to be improper governmental action , and 2) to provide protection from retaliatory action for such reporting, or for cooperating in the investigation or prosecution of improper governmental action. It is the intent of this policy that Port employees feel free to report to their supervisors, or to any other appropriate person within the Port, without fear of retaliation, any matter which they believe could constitute improper governmental action involving the Port or those that do business with the Port. In reporting any such matters however, employees should consider that rational and legitimate explanations may exist for activities which at first may appear to be improper. For this reason, employees are expected to act with reasonable care, thoughtfulness, and respect for the reputations of fellow employees, as well as the reputation of the Port, when reporting actions suspected or believed to be improper governmental actions.

## II. DETAILS:

A. Definitions:

1. Employee:

Any individual employed by the Port, whether in a permanent or temporary position, including full time, part-time, salaried or hourly workers. The term "employee" does not include independent contractors or consultants or employees of independent contractors or consultants.

2. Improper Governmental Action

Any action by a Port employee, commissioner, consultant, contractor or agent:

a. Which is undertaken on behalf of the Port whether or not the action is within the scope of employment; and

b. Which may be in violation of any state law or rule, an abuse of authority, of substantial and specific danger to the public health or safety, or a gross waste of public funds. Improper Governmental Action also may include matters within the scope of Resolution No. 3583, as amended (or any successor Ethics Resolution), or of the Port's Ethics Policy for Employees, the Port's Code of Ethics for Consultants, or fraud as defined in the Port's Fraud Awareness Policy.

"Improper governmental action" does not include personnel matters. (Personnel matters include typical personnel and job administration issues such as promotions, job assignments, performance evaluations, demotions, discipline or grievances.)

Further, a properly authorized Port policy, procedure, activity, program or expenditure is not "improper governmental action" merely because an employee disagrees with the intended result or outcome or considers the action or expenditure unwise.

B. Right to Report:

1. An employee who in good faith reports improper governmental actions in accordance with this policy is protected from retaliation.

2. Any of the following persons are appropriate persons for an employee to report improper governmental action:

1.   The employee's immediate supervisor or manager
2.   The employee's department director or chief
3.   The Director, Human Resources & Development
4.   The Port's General Counsel
5.   Any executive level director or manager

3. An employee has the right to report suspected improper governmental action without fear of retaliatory action, to any of the persons identified above, or to any other person within the Port the employee deems appropriate and who can reasonably be expected to take further action.

4. An employee has the right to report suspected improper governmental action to an appropriate investigatory, prosecutorial or enforcement agency or to the Port's external Ethics Board, without fear of retaliatory action. Employees are encouraged, but not required, to report any information concerning a suspected improper governmental action to any of the persons identified above prior to reporting such information to representatives of other agencies.

5. This policy does not authorize an employee to report privileged information or information that is legally protected from disclosure.

6. An employee who reports his/her own improper action does not automatically receive immunity from disciplinary action.

C. <u>Retaliatory Action</u>:

1. Retaliatory actions include any unwarranted adverse change in an employee's employment status, terms or conditions, like: demotion, transfer, assignment of additional duties, denial of adequate staff to perform assigned duties, excessive supervision, unwarranted and unsubstantiated letters of reprimand or unsatisfactory performance evaluations, reduction in pay, denial of promotion, frequent and undesirable office changes, suspension or termination.

2. Employees are prohibited from using their official authority or position to prevent or interfere with an employee reporting improper governmental action.

3. Imposing or engaging in retaliatory action is grounds for disciplinary action.

D. <u>Investigation</u>:

1. Whenever an employee reports improper governmental action, the employee and the person to whom the matter has been reported should confer about whether further or independent investigation of the matter is warranted. If, after conferring, either the employee or the person to whom the report was made believes further action is warranted, the matter should be referred to the Port's General Counsel for review (if it has not already been brought to the General Counsel's attention).

2. Whenever a report of improper governmental action is provided to the Port's General Counsel, the General Counsel will conduct or arrange for a preliminary investigation. Upon completion of the preliminary investigation, the General Counsel will notify the reporting employee of the preliminary findings. The General Counsel shall complete a preliminary investigation within thirty days of receipt of the information prompting the investigation.

3. If after preliminary investigation, the General Counsel determines that improper governmental action has occurred, or is likely to have occurred, the General Counsel will report the nature and the details to the Chief Executive Officer and the President of the Port Commission. The Chief Executive Officer will determine what further action to be taken and what further reporting will occur, consistent with local, state, and federal laws.

E. <u>Confidentiality</u>:

Except as necessary to facilitate investigation and to the extent allowed by law, any person within the Port receiving information about improper governmental action under this policy shall keep all information received confidential, including (1) the identity of any employee reporting such information (unless the reporting employee expressly waives confidentiality), and (2) the identity of the employee or employees alleged to have engaged in improper governmental action until all resulting investigation activity has been completed.

For further information please contact <u>Linda Strout</u>.

# Exhibit "3"

**TO DECLARATION OF TRACY JONASSEN IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANT PORT OF SEATTLE'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COMPLAINT**

# FRAUD AWARENESS & PREVENTION, LOSS of PUBLIC FUNDS & ASSETS

## EX-18 as of 2/15/08

## I. STATEMENT OF THE POLICY:

The Port defines the term "Fraud" as any wrongful or criminal deception intended to result in financial or personal gain.

The Port of Seattle has zero tolerance for fraud.

The Port is committed to having a work atmosphere of fraud awareness, where its employees, which includes interns and volunteers, understand the indications of potential fraudulent activity and are supported when carrying out their responsibility to immediately report such activity.

The Port will facilitate timely notification of and take immediate action on any known or reported suspected loss of Port funds or assets, fraud or any illegal activity.

An independently administered Fraud Hotline, available to employees and the public, will be in place to report suspected losses or fraud: Toll free (877) 571-5237.

The Port Commission President and Port General Counsel will receive all reports of suspected fraud and may convene a meeting of the Fraud Response Committee established for this purpose.

## II. DETAILS:

### A. Purpose

1. To ensure proper stewardship over public funds and assets, and provide timely and proper handling of any known or suspected loss of such funds or assets or fraudulent activity.

2. To comply with RCW 43.09.185, that requires State agencies and local governments to immediately report any known or suspected loss of public funds or assets to the State Auditor's Office (SAO).

3. To establish clear expectations and ensure consistent and timely action by the Port.

00661

4. To ensure that losses are minimized; investigations and audits are not hampered; improper settlements are not made with employees; incorrect personnel actions are not taken; employees are protected from false accusations; and bond claims are not jeopardized.

## B. Requirements

1. Losses required to be reported -- Irregularities that reasonably leads a Port employee to suspect a loss of Port funds or assets due to misappropriation or fraud, must be reported in accordance with this policy. This includes all suspected losses, including those that have occurred in the past but only recently become apparent.

2. Materiality of reportable losses -- All suspected and known losses shall be reported in accordance with this policy, regardless of amount. The full exposure to the Port can only be determined by a thorough investigation.

3. Losses not required to be reported -- Consistent with SAO guidelines, the following are not considered losses reportable under this policy. However, those in leadership positions for the related operations are responsible to monitor such activities for unreasonable irregularities and take action in accordance with this policy as necessary.

   a. Normal and reasonable "over and short" situations from cash receipting operations. These transactions are to be recorded in the accounting system as miscellaneous income and expense, respectively, and monitored by cashier for any unusual trends.

   b. Reasonable inventory shortages identified during a physical count. These inventory adjustments are to be recorded in the accounting system and monitored accordingly.

4. Full cooperation -- All Port employees shall fully and timely cooperate with any internal or external investigations that may be pursued.

5. Restrictions on restitution or repayment action -- For any irregularity determined to be a loss of funds or assets due to misappropriation or fraud, no restitution or repayment agreement with an employee shall be entered into without guidance from General Counsel, an audit conducted to establish the amount of loss, and prior approval from the SAO and State Attorney General's Office. State law requires written approval of the State Auditor and Attorney General before State agencies and local governments can make any restitution agreement, compromise or settlement of loss claims related to a misappropriation or fraud.

6. Violation of this policy -- Any Port employee who violates this policy shall be subject to disciplinary action, in accordance with Port Policy HR-18.

7. Commitment of fraud -- Any fraud committed by a Port employee shall be considered a gross misconduct, for which immediate termination without progressive discipline may be imposed, in accordance Port policy HR-18.

## C. Fraud Response Committee

1. The Port's Fraud Response Committee is comprised of the Deputy CEO, General Counsel, Chief Administrative Officer and the Accounting Director. If any member of the Committee has or reasonably believes they may have a conflict with any matter, they shall immediately recuse themselves from any further participation in that matter.

2. Any Port employee that becomes aware of or suspects a loss of Port funds or assets or fraud shall immediately report this to the Fraud Hotline, General Counsel or a Port senior manager. Any Port employee who receives a report of suspected loss or fraud shall immediately inform the General Counsel or Chief Executive Officer.

3. Following receipt of a Fraud Hotline report or other report of fraud, the General Counsel and Commission President shall confer. The General Counsel shall make preliminary inquiries and review relevant documents for the purpose of determining whether cause exists to pursue the matter further. The General Counsel may also submit requests for additional information through the Fraud Hotline process as necessary. The General Counsel will then draft a written recommendation that the matter be pursued further or that the matter should be closed for lack of substantiation.

4. The General Counsel shall forward his or her recommendation to the Commission President and the Chief Executive Officer and will, thereafter, convene a meeting of the Fraud Response Committee. The Fraud Response Committee shall review the General Counsel's recommendation and the Committee will determine whether further action is appropriate. The Chief Financial Officer will be kept informed.

5. If the Fraud Response Committee determines that further action is necessary, the Committee will determine the appropriate next steps including establishing the scope of the inquiry and determining whether in-house resources or outside consultants should be used to conduct the review.

6. The Internal Audit Manager, or retained consultant as determined by the Fraud Response Committee, shall conduct an investigation to gather the facts, determine the nature of the irregularity, and inform the Fraud Response Committee.

7. At the point it is suspected or known that a loss of public funds or assets or fraud has occurred, the Internal Audit Manager shall immediately notify the SAO in accordance with RCW 43.09.185.

8. The Fraud Response Committee shall determine the appropriate next steps for action, based on the Internal Audit Manager's or retained consultant's assessment and recommendations. This may include involving appropriate law enforcement and the Port Ethics Committee, as well as recommending

appropriate disciplinary action with the assistance of the Director of Human Resources and Development.

9. The Risk Manager shall be notified of all known and suspected instances of fraudulent activity by the Internal Audit Manager. The Risk Manager, in coordination with General Counsel, shall determine whether to file a claim against the Port's employee dishonesty insurance policy, considering the circumstances.

10. Any Port employee in possession of or responsible for relevant financial, operational and all other records shall protect them from loss or destruction, and all original records related to the loss shall be secured in a safe place until a full audit/investigation has been completed.

## D. Employee Conduct

At minimum, Port employees shall:

1. Conduct themselves with the utmost integrity and professionalism.

2. Contribute to the Port having a work environment of fraud awareness, zero tolerance for fraud, and immediate reporting of any suspected losses or fraud.

3. Fully comply with this policy and with the Port's "Ethics Policy for Port Employees" EX-3.

4. Fully cooperate with, and avoid any actions that may impede, an audit or investigation.

___

For further information contact Craig Watson.

# Exhibit "4"

**TO DECLARATION OF TRACY JONASSEN IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANT PORT OF SEATTLE'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COMPLAINT**

# ANTI-HARASSMENT

## HR-22 as of 05/16/06

Original: 06/17/80

## I. STATEMENT OF THE POLICY:

The Port of Seattle does not tolerate illegal harassment in the workplace. Illegal harassment refers to behavior that is not welcome, that is personally offensive, that debilitates morale, and that, therefore, interferes with work effectiveness. Illegal harassment includes but is not necessarily limited to unwelcome verbal or physical conduct that is derogatory of an employee's age, race, color, national origin/ancestry, religion, disability, Family Medical Leave Act (FMLA) use, pregnancy, sex/gender, sexual orientation, whistleblower status, marital status, military status, use of workers' compensation, transgender status, or any other category protected by law. Violations of this policy may result in disciplinary action up to and including termination.

## II. DETAILS:

### Coverage

The Port of Seattle does not tolerate illegal harassment at the workplace, or during the course of business involving the Port of Seattle, or while on or off Port property by an employee (including supervisors and managers). Nor will the Port tolerate illegal harassment of any of its employees by non-employees (including customers, visitors, and independent contractors).

### Management Responsibility

Port Management at all levels is responsible for preventing illegal workplace harassment. This responsibility includes immediately reporting conduct by anyone – coworker, supervisor, or non-employee – that may constitute illegal harassment, even if the conduct was sanctioned and regardless of how awareness of the conduct was gained.

### Sexual Harassment Defined

Note that similar behavior based on any other protected category is similarly prohibited. Sexual harassment is specifically called out because it more often involves a physical component, although offensive gestures, symbols, or touch may characterize any form of illegal harassment.

Sexual harassment prohibited by law and by this policy includes the following conduct:

- Unwelcome verbal or physical conduct of a sexual nature when submission to the conduct is made either an explicit or implicit term or condition of employment (such as promotion, training, overtime assignment, leave of absence); or
- Unwelcome verbal or physical conduct of a sexual nature when submission to or rejection of the conduct is used as a basis for making employment decisions; or
- Unwelcome verbal or physical conduct of a sexual nature when the conduct has the purpose or

00692

ANTI-HARASSMENT                                                                Page 2 of 2

effect of substantially interfering with a person's work performance, or of creating an intimidating, hostile, or offensive work environment; or

- Unwelcome verbal or physical nonsexual conduct that denigrates or shows hostility toward a person because of his or her gender when the conduct has the purpose or effect of substantially interfering with a person's work performance, or creating an intimidating, hostile, or offensive work environment.

Examples of Prohibited Conduct

Examples of conduct prohibited by this policy include:

- Offering or implying an employment-related action (such as promotion or raise) in exchange for sexual favors, or submission to sexual conduct;
- Threatening or taking of a negative employment action (such as termination, demotion, denial of a leave of absence) if sexual conduct or some other action tied to a protected category is rejected;
- Unwelcome sexual advances or repeated flirtations;
- Unwelcome gestures or symbols related to any protected class;
- Unwelcome intentional touching of another person or other unwanted intentional physical contact (including patting, pinching, or brushing up against another person's body);
- Asking unwelcome questions or making unwelcome comments about another person's sexual activities, dating, personal or intimate relationships, appearance, race, religion, age, or any other category protected by law;
- Unwelcome whistling, staring, or leering at another person;
- Unwelcome sexually suggestive or flirtatious gifts, letters, notes, e-mail, or voice mail;
- Conduct or remarks that are sexually suggestive or that demean or show hostility to a person because of person's  age, race, color, national origin/ancestry, religion, disability, Family Medical Leave Act (FMLA) use, pregnancy, sex/gender, whistleblower status, marital status, military status, use of workers' compensation, or any other category protected by law (including jokes, taunts, negative stereotyping, threats, and blocking of physical movement);
- Displaying or circulating pictures, objects, or written materials (including graffiti, cartoons, photographs, pinups, calendars, magazines, figurines, novelty items) that are sexually suggestive or that demean or show hostility to a person because of the person's age, race, color, national origin/ancestry, religion, disability, Family Medical Leave Act (FMLA) use, pregnancy, sex/gender, sexual orientation, whistleblower, marital status, military status, use of workers' compensation, or any other category protected by law.

_____

For further information contact hillson.m@portseattle.org; alvarez.c@portseattle.org.

00608

# ANTI-HARASSMENT

## HR-22 as of 05/16/06

Original: 09/06/83; Revisions: 02/03/03; 03/10/99; 05/16/95; 01/27/95

---

## I. STATEMENT OF THE PROCEDURE:

The Port of Seattle hereby establishes procedures to enforce its Anti-Harassment Policy, which reads:

*The Port of Seattle does not tolerate illegal harassment in the workplace. Illegal harassment refers to behavior that is not welcome, that is personally offensive, that debilitates morale, and that, therefore, interferes with work effectiveness. Illegal harassment includes but is not necessarily limited to unwelcome verbal or physical conduct that is derogatory of an employee's age, race, color, national origin/ancestry, religion, disability, Family Medical Leave Act (FMLA) use, pregnancy, sex/gender, sexual orientation, whistleblower status, marital status, military status, use of workers' compensation, transgender status, or any other category protected by law. Violations of this policy may result in disciplinary action up to and including termination.*

## II. DETAILS:

Employees' Responsibility

Any employee who believes that he or she has been subjected to illegal harassment by anyone is encouraged – but not required – to tell the person promptly that the conduct is unwelcome and to ask the person to stop the conduct. And, anyone who receives such a request must immediately comply with it and must not retaliate against the employee.

Illegal harassment complaints must be brought to the attention of the Port of Seattle immediately. Employees may report a complaint by phone, in writing (letter or e-mail) or in person. An employee should bring his/her complaint to the attention of any of the following employees:

1. Cynthia Alvarez, Diversity Consultant, Human Resources and Development
2. Marjorie Hillson, Manager Consulting Services and Diversity, Human Resources and Development
3. Rosalee Walz, Director, Human Resources and Development
4. Other Human Resources and Development Staff (who will be expected to notify one of the people listed above)

The employee may also choose to raise the complaint through his or her immediate supervisor, who will, in turn, contact any of the employees listed above. If the employee feels uncomfortable discussing the complaint with the supervisor or manager, the employee should feel free to bypass his/her supervisor or manager and take the complaint to a higher level manager or to one of the above listed employees in Human Resources and Development.

Supervisors' and Managers' Responsibility

Case 2:11-cv-00034-RAJ   Document 48-1   Filed 04/02/12   Page 17 of 38

After receiving an employee complaint of illegal harassment, the supervisor or manager must immediately notify any of the employees listed above.

If a supervisor or manager has not received a complaint, but suspects that conduct might constitute illegal harassment, the supervisor must immediately notify any of the employees listed above.

Even if the suspected illegal harassment involves consultants, vendors, or employees who work in a department other than that managed by the supervisor or manager, the supervisor or manager must report it.

Investigations and Resolution

After notification of an employee complaint, one of the above identified employees or designee will immediately conduct an investigation to gather all facts about the complaint. Employees must cooperate fully with any Port of Seattle investigation. After completion of the investigation, a determination will be made as to the merits of the complaint. If warranted, disciplinary action up to and including termination may be imposed. Other appropriate actions will be taken to correct problems caused by the conduct.

Confidentiality

All complaints will be handled as confidentially as possible, but the Port cannot promise absolute confidentiality. However, the fewest possible people will be notified and individually instructed not to discuss the matter at hand with anyone else.

Retaliation Prohibited

This policy absolutely prohibits retaliation against employees who bring illegal harassment complaints or who assist in the investigation of a complaint. Retaliation in violation of the policy may result in discipline up to and including termination. Any employee who reports illegal harassment or assists in an investigation will not be adversely affected in terms or conditions of employment, discriminated against or discharged because of the complaint, report, or assistance unless it is determined that the employee acted in bad faith and intentionally provided false or misleading information.

Other Forms of Unlawful Harassment

In addition to our policy prohibiting sexual harassment, the Port of Seattle strives to maintain a working environment free from all forms of illegal harassment, whether based upon age, race, color, national origin/ancestry, religion, disability, Family Medical Leave Act (FMLA) use, pregnancy, sex/gender, whistleblower status, marital status, military status, use of workers' compensation, transgender status, or any other category protected by law. Not only does the Port of Seattle not tolerate discrimination based on any of these characteristics, but it also expects all employees to refrain from any words or conduct – including ethnic jokes, religious slurs, slang terms denoting race, age, national origin, disability, derogatory comments, cartoons, graffiti, etc. – that might create a hostile or offensive working environment. Violations of this policy may result in disciplinary action up to and including termination.

For further information contact hillson.m@portseattle.org; alvarez.c@portseattle.org

00610



Fully Effective Employees, Inc.

Volume 13 Issue 3

Summer 2007

# EAP Update

A Newsletter for Human Resource Professionals and Managers

## Frequently Asked Questions for Managers

**1. Question: My employee says she is being "bullied" by a co-worker and that she does not want to work with her anymore. Could this be two people who just don't get along or should I take some action? I have never seen any evidence of the other employee acting inappropriately.**

A complaint of deliberate teasing, harassing or bullying is serious and must be investigated. Authority figures are often the last to witness bullying behavior. As you gather information, be aware that the bullying employee may attempt to retaliate against the complainant. Feel free to consult with the EAP about the details of the situation.

**2. My employee tested positive on a drug test and he denies ever using drugs. He says that the EAP is requiring him to go to treatment and this seems very unfair. After all, he is one of my best employees.**

When the EAP counselor conducts an assessment of an employee after a positive drug test, many factors are taken into consideration. We evaluate the level of drugs found on the test. If this level is high, it would not indicate an occasional user or someone who claims to have never used. We also conduct a comprehensive assessment which includes many questions about a person's drug and alcohol use, family use and past legal, work or family problems. We sometimes use a test that measures and rates a person's answers to which indicates whether the person is chemically dependent. Finally, we often refer the employee to an independent treatment agency for a second opinion evaluation.



(Please note that we do not send the person to this agency for treatment, if indicated, unless they choose to go there). As a result, once we make a recommendation for treatment, we are confident that treatment is in fact, indicated. We make every effort to refer the employee to an agency that best meets their treatment, financial and location needs.

**3. I caught an employee using pornography on the company computer but it appears to be have been after hours. What can I do?**

Work computers should be used only for work, whether or not they are used after hours. Viewing pornography on a company computer is serious and should not be tolerated. This is company property. If the pornography includes under age children, it is illegal. This material is stored in a computer's memory and can create crashes and viruses. It can also show up on the computer when another employee is using it, which could be quite offensive to that co-worker. Consider referring the employee to the EAP for a work performance issue and be careful to document that any other incidents of this nature will be grounds for termination. Some people become addicted to Internet pornography and have difficulty stopping on their own. A zero tolerance policy is very important and you should be sure to follow up to ensure the employee is not continuing.

**4. If I refer the employee to the EAP for a performance issue what do I do if the performance doesn't improve?**

Although the referral is confidential and we cannot disclose any personal details about our meeting, we will let you know if the employee is following our recommendations. Some employees do not choose to follow recommendations or sometimes their performance does not improve because they are not making enough changes or it has gone on too long and become too severe. While the EAP can help with some performance issues, others may require further disciplinary action.

00611

# Great Ways to Motivate Your Team

Learn how to facilitate your work group into an effective team.

"Rather than telling people what to do, effective leaders help bring out the best in their team members," says Andrew J. DuBrin, Ph.D., a management professor at the Rochester Institute of Technology in Rochester, New York, and author of The Breakthrough Team Player.

"One way to succeed is to perfect your coaching style. As a coach, you can make on-the-spot suggestions and offer team members encouragement."

## Supporting Your Team

Following these tips will help you improve your effectiveness as a team leader:

- **Provide specific feedback.** Pinpointing behaviors, attitudes and/or skills that need improvement will help you coach a team member to perform at a higher level.

- **Help your team devise a mission statement.** Creating such a statement can help team members focus more clearly.

- **Be supportive.** Providing emotional support and encouragement can help a leader improve the work of team members who aren't performing at their best. Just being helpful may be enough.

- **Be a model of what you expect.** An effective leader spurs others to act appropriately by setting an example. For instance: Cooperating with people from other organizational units will encourage team members to do the same.

> **An effective leader spurs others to act appropriately by setting an example.**

- **Foster teamwork.** Promote the attitude that working together effectively leads to success for everyone. Refer to those in the group as team members or teammates instead of subordinates or employees. Make frequent use of the words "we" and "us." For example: "We achieved the new sales goal."

- **Encourage team members to treat one another as customers.** Most people treat customers with more respect and concern than they do fellow employees at or below their levels. Encouraging team members to treat each other as customers fosters cooperative behavior and politeness.

- **Bring team members together** for meetings, meals and occasional parties.

- **Schedule most get-togethers** during regular office hours so you don't intrude on people's personal time. Emphasize that yours is a winning team. Frequently remind team members that their work is important. Help them identify tasks they're particularly good at and promote them as key members of the group. Build the commitment and confidence of each team member. "For the group to develop a strong team spirit, individuals must feel a sense of mutual accountability," DuBrin says. "Frequently reminding team members of what they're doing right is one way to build commitment and self-confidence."

- **Emphasize group recognition.** Giving rewards for group accomplishments promotes team spirit by enabling team members to take pride in the entire team's contributions and progress. "Consider creating a display wall for postings of team activities, certificates of accomplishment and upcoming events," says DuBrin. "If you have room in your budget, you might want to order T-shirts, athletic caps, mugs or key rings imprinted with your team name or logo."

- **Don't keep the best assignments for yourself.** Doing this dampens team spirit and hampers performance. "Look for opportunities that will allow other team members to perform at a high level," DuBrin says.



- **Welcome all input.** Team spirit increases when everyone contributes. DuBrin says, "It's especially important that the leader not allow one or two people on their team to do most of the work."

*Source: Worklife Services*

00612

# Helping Disabled Employees Return to Work

One of the most challenging employer concerns today is the cost of disability and absence. An employee's return to work following a leave of absence, whether related to a disabling condition or a family situation, requires planning and support for full and successful re-integration.

**Functional Assessment**

When an employee is on disability, it is not enough to do a diagnostic assessment; the employee's work functionality must be considered as well. Work is an important activity of daily living and can have a tremendous impact on the employee. To assess the impact of a condition on a person's ability to work, a clinician must be adept at answering the following questions:

• Do the employee's symptoms prevent him from doing his/her job?

• What barriers to the employee's return to work exist?

• How can the treatment plan support returning to work as a positive step in recovery?

• What additional resources are available to support the employee's return to work?

• Consider the timeline for appointments and additional interventions. Each day that an employee delays beginning treatment or accessing a needed resource for his return to work, has a financial impact on the employee, his family, and the employer.

**Return-to-Work Consultation**



Absence does not make the heart grow fonder. In fact, most people experience increased anxiety and stress related to returning to work the longer they are away. This can lengthen the duration of their disability, with clinical as well as life-management repercussions. A good return-to-work consultation can make a tremendous difference in the ability and experience of returning to work.

• Discuss the employee's work relationships and perception of impact of the absence upon these relationships.

• Consider ways for the employee to connect to workplace relationships prior to returning to work (for example, meeting with co-workers for lunch).

• Consider a conference call or meeting with supervisors to discuss the plan and timeline for the employee's return to full functioning at work. This may address the employee's concerns about what co-workers have been told about the absence, co-workers who have taken on the employee's work load during the absence, and any changes that have occurred. discussion.

• Consider any accommodations or alternative work schedules to allow for maximum support in transitioning back as quickly as possible.

• Set up support systems and plans for handling stress or anxiety related to the return to work.

## FEE Staff Update

Susan Valentine left FEE on May 31, to pursue a full time private counseling practice. Sue added a great deal to Fully Effective Employees for the past eight years. She has been a contributor to these quarterly newsletters, conducted numerous trainings and worked with many clients and their employers over the years. She will be missed but we wish her much success in her new venture.

We are pleased to welcome Mary Peters, LMHC. Mary is a licensed mental health counselor with extensive experience in both the mental health counseling field as well as HR Director and trainer. Mary will be working part time on Monday, Tuesday and Friday morning.

Lou Dodson, who had been working part time for the past year, began working full time in June.

Cynthia Smith, our clinical EAP manager and clinical supervisor has just completed ten years of service at FEE.   She has been an invaluable part of our team and has not only trained and supervised our staff but assisted many employers, employees and their families over the years.

We also congratulate Dena Small on her five year anniversary at FEE. The dedication of our staff to our company and our clients is what helps make our program so successful.

00613

# ANTI-HARASSMENT

## HR-22 as of 04/08/08

Original: 06/17/80; Revisions: 5/16/06

---

## I. STATEMENT OF THE POLICY:

The Port of Seattle does not tolerate illegal harassment in the workplace. Illegal harassment refers to behavior that is not welcome, that is personally offensive, that debilitates morale, and that, therefore, interferes with work effectiveness. Illegal harassment includes but is not necessarily limited to unwelcome verbal or physical conduct that is derogatory of an employee's age, race, color, national origin/ancestry, religion, disability, Family Medical Leave Act (FMLA) use, pregnancy, sex/gender, sexual orientation, whistleblower status, marital status, military status, use of workers' compensation, transgender status, **political beliefs**, or any other category protected by law. **The Port of Seattle has a zero tolerance policy concerning harassment. A zero tolerance policy is a policy of having no tolerance for transgressions under the policy. Any alleged violation of this policy will generate an investigation and, if verified, will be considered "gross misconduct" and can subject an employee to immediate termination.**

## II. DETAILS:

Coverage

The Port of Seattle does not tolerate illegal harassment at the workplace, or during the course of business involving the Port of Seattle, or while on or off Port property by an employee (including supervisors and managers). Nor will the Port tolerate illegal harassment of any of its employees by non-employees (including customers, visitors, and independent contractors).

Management Responsibility

Port Management at all levels is responsible for preventing illegal workplace harassment. This responsibility includes immediately reporting conduct by anyone – coworker, supervisor, or non-employee – that may constitute illegal harassment, even if the conduct was sanctioned and regardless of how awareness of the conduct was gained.

Sexual Harassment Defined

Note that similar behavior based on any other protected category is similarly prohibited. Sexual harassment is specifically called out because it more often involves a physical component, although offensive gestures, symbols, or touch may characterize any form of illegal harassment.

Sexual harassment prohibited by law and by this policy includes the following conduct:

- Unwelcome verbal or physical conduct of a sexual nature when submission to the conduct is made either an explicit or implicit term or condition of employment (such as promotion, training, overtime assignment, leave of absence); or

- Unwelcome verbal or physical conduct of a sexual nature when submission to or rejection of the conduct is used as a basis for making employment decisions; or
- Unwelcome verbal or physical conduct of a sexual nature when the conduct has the purpose or effect of substantially interfering with a person's work performance, or of creating an intimidating, hostile, or offensive work environment; or
- Unwelcome verbal or physical nonsexual conduct that denigrates or shows hostility toward a person because of his or her gender when the conduct has the purpose or effect of substantially interfering with a person's work performance, or creating an intimidating, hostile, or offensive work environment.

**Displaying or circulating in any manner and/or through e-mail, voice mail, or other electronic means pictures, objects, or written materials (including graffiti, cartoons, photographs, pinups, calendars, magazines, figurines, novelty items) that are sexually suggestive or that demean or show hostility to a person because of the person's age, race, color, national origin/ancestry, religion, disability, Family Medical Leave Act (FMLA) use, pregnancy, sex/gender, sexual orientation, whistleblower, marital status, military status, use of workers' compensation, political beliefs or any other category protected by law.**

Examples of conduct prohibited by this Anti-Harassment Policy include:

- Offering or implying an employment-related action (such as promotion or raise) in exchange for sexual favors, or submission to sexual conduct;
- Threatening or taking of a negative employment action (such as termination, demotion, denial of a leave of absence) if sexual conduct or some other action tied to a protected category is rejected;
- Unwelcome sexual advances or repeated flirtations;
- Unwelcome gestures or symbols related to any protected class;
- Unwelcome intentional touching of another person or other unwanted intentional physical contact (including patting, pinching, or brushing up against another person's body);
- Asking unwelcome questions or making unwelcome comments about another person's sexual activities, dating, personal or intimate relationships, appearance, race, religion, age, or any other category protected by law;
- Unwelcome whistling, staring, or leering at another person;
- Unwelcome sexually suggestive or flirtatious gifts, letters, notes, e-mail, or voice mail;
- Conduct or remarks that are sexually suggestive or that demean or show hostility to a person because of person's age, race, color, national origin/ancestry, religion, disability, Family Medical Leave Act (FMLA) use, pregnancy, sex/gender, whistleblower status, marital status, military status, use of workers' compensation, or any other category protected by law (including jokes, taunts, negative stereotyping, threats, and blocking of physical movement);
- Displaying or circulating **in any manner and/or through e-mail, voice mail or other electronic means** pictures, objects, or written materials (including graffiti, cartoons, photographs, pinups, calendars, magazines, figurines, novelty items) that are sexually suggestive or that demean or show hostility to a person because of the person's age, race, color, national origin/ancestry, religion, disability, Family Medical Leave Act (FMLA) use, pregnancy, sex/gender, sexual orientation, whistleblower, marital status, military status, use of workers' compensation, **political beliefs** or any other category protected by law.

For further information contact hillson.m@portseattle.org; alvarez.c@portseattle.org.

2. Marjorie Hillson, Manager Consulting Services and Diversity, Human Resources and Development
3. Rosalee Walz, Director, Human Resources and Development
4. Other Human Resources and Development Staff (who will be expected to notify one of the people listed above)

The employee may also choose to raise the complaint through his or her immediate supervisor, who will, in turn, contact any of the employees listed above.  If the employee feels uncomfortable discussing the complaint with the supervisor or manager, the employee should feel free to bypass his/her supervisor or manager and take the complaint to a higher level manager or to one of the above listed employees in Human Resources and Development.

Supervisors' and Managers' Responsibility

After receiving an employee complaint of illegal harassment, the supervisor or manager must immediately notify any of the employees listed above.

If a supervisor or manager has not received a complaint, but suspects that conduct might constitute illegal harassment, the supervisor must immediately notify any of the employees listed above.

Even if the suspected illegal harassment involves consultants, vendors, or employees who work in a department other than that managed by the supervisor or manager, the supervisor or manager must report it.

Investigations and Resolution

After notification of an employee complaint, one of the above identified employees or designee will immediately conduct an investigation to gather all facts about the complaint.  Employees must cooperate fully with any Port of Seattle investigation.  After completion of the investigation, a determination will be made as to the merits of the complaint.  If warranted, disciplinary action up to and including termination may be imposed.  Other appropriate actions will be taken to correct problems caused by the conduct.

Confidentiality

All complaints will be handled as confidentially as possible, but the Port cannot promise absolute confidentiality.  However, the fewest possible people will be notified and individually instructed not to discuss the matter at hand with anyone else.

Retaliation Prohibited

This policy absolutely prohibits retaliation against employees who bring illegal harassment complaints or who assist in the investigation of a complaint.  Retaliation in violation of the policy may result in discipline up to and including termination.  Any employee who reports illegal harassment or assists in an investigation will not be adversely affected in terms or conditions of employment, discriminated against or discharged because of the complaint, report, or assistance unless it is determined that the employee acted in bad faith and intentionally provided false or misleading information.

For further information contact hillson.m@portseattle.org; alvarez.c@portseattle.org

00617

# Exhibit "5"

**TO DECLARATION OF TRACY JONASSEN IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANT PORT OF SEATTLE'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COMPLAINT**

# VIOLENCE IN THE WORKPLACE

## HR-16  as of  1/23/04

Original:  1/23/04

## I.  STATEMENT OF THE POLICY

The Port of Seattle is committed to maintaining a safe, healthful, and efficient working environment where employees and the public are free from the threat of workplace violence and supports a proactive approach in preventing workplace violence.  This safety program has been established to assist managers, supervisors, and employees in taking preventive action against violence in Port of Seattle workplaces.  This policy is established in accordance with the general statutes of the Occupational Safety and Health Standards.

## II.  DETAILS:

Responsibilities:

It is the responsibility of each manager, supervisor, and employee to ensure implementation of the Port's Violence in the Workplace policy.

It is also the responsibility of each employee to immediately report any unsafe act or condition to his or her supervisor.

## III.  RELATED PORT PROCEDURE

HR-16 - Violence in the Workplace

For further information contact Manette Moses or Marjorie Hillson.

# VIOLENCE IN THE WORKPLACE

## HR-16 as of 01/23/04

Original:  1/23/04

---

## I. PURPOSE:

This procedure supports Policy HR-16 - Violence in the Workplace and provides guidelines for managing workplace violence at the Port of Seattle.  It includes provisions for management and employee awareness sessions, outlines prohibited behavior, and presents reporting and investigation requirements.  This procedure also presents confidentiality, discipline, and retaliation requirements and conditions.

## II. SCOPE

This procedure details the areas of responsibility for managers, supervisors, employees, Safety, Risk Management and Human Resources and Development Sections within the Port of Seattle.

## III. DEFINITIONS

*Workplace Violence* - Includes, but is not limited to, intimidation, threats, physical attack or property 'amage.

*Intimidation* - Includes but is not limited to stalking or engaging in actions intended to frighten, coerce, or induce duress.

*Threat* - The expression of an intent to cause physical or mental harm.  An expression constitutes a threat without regard to whether the party communicating the threat has the present ability to carry it out and without regard to whether the expression is contingent, conditional or future.

*Physical Attack* - Unwanted or hostile physical contact such as hitting, grabbing, fighting, pushing, shoving or throwing objects.

*Property Damage* - Intentional damage to property which includes property owned by the Port, employees, visitors or vendors.

## IV. GENERAL PROVISIONS

1. Workplace Violence Awareness Sessions

The Port of Seattle will provide workplace violence awareness sessions.  Managers are to encourage all employees to participate.

2. Prohibited Behavior

a. Prohibited behaviors are those behaviors that are defined in Section III above and behaviors that:

- Threaten the safety of an employee, contractor and/or public.
- Affect the health, life, or well-being of an employee, contractor and/or customer.
- Result in damage to organization, employee, contractor or public property.

b. Such behaviors prohibited include, but are not limited to:

- Threatening, intimidating, coercing, or assaulting an employee or the public.
- Damaging, or attempting to damage, property of Port of Seattle, an employee, or the public.

c. Appendix B presents information on types of workplace violence.

d. In situations considered to be potentially volatile or where fitness for duty concerns exist, management has the option to consider the use of <u>Procedure HR-18 - Standards of Performance and Conduct, Corrective Action and Discipline</u>, and a referral to the Employees' Assistance Program, (EAP).

### 3. <u>Reporting and Investigation</u>

Any employee (including a manager or supervisor) who has been threatened, is a victim of a violent act, witnesses any threats or violent acts, or learns of any threats or violent acts, is to immediately report such activity to their supervisor or the Director of Human Resources and Development or her/his delegate.

### 4. <u>Confidentiality</u>

Information about an incident or threat will be disclosed on a needs-to-know basis only, so that a fair and thorough investigation can be conducted and/or appropriate corrective action can be taken. Additionally, the Port of Seattle will make every effort to ensure the privacy of the individuals involved.

### 5. <u>Discipline</u>

An employee who engages in prohibited behavior will be subject to appropriate disciplinary action, as determined by the findings of the investigation. Such discipline will follow the Port's established progressive discipline policy and applicable collective bargaining agreements. Employees may be subject to immediate dismissal for gross misconduct.

### 6. <u>Retaliation</u>

Episodes of workplace violence can only be eliminated if employees are willing and able to report threats, violent acts and other unsafe conditions. To encourage employees to come forward without the fear of retaliation, the Port of Seattle Human Resources and Development Department will promptly investigate all complaints of retaliation and impose appropriate disciplinary action, up to and including dismissal.

### 7. <u>Counseling</u>

Dealing with or being exposed to a violent or abusive situation can be unsettling to employees observing workplace violence. The Port of Seattle's Human Resources and Development Department staff can arrange follow-up counseling services in response to requests from affected employees.

If employees prefer external counseling for emotional and/or family support, they are encouraged to contact the Employee Assistance Program (EAP).

In all instances, confidentiality is assured.

## V. <u>RESPONSIBILITIES</u>

### 1. <u>Managers</u>

Managers are to promote compliance with this procedure.  They are responsible for identifying the vulnerable locations and work activities most susceptible to workplace violence (See Appendix C). Managers will coordinate workplace violence awareness sessions for employees.

### 2. <u>Supervisors</u>

Supervisors will assist managers in the identification of vulnerable locations and work activities within their organization.

### 3. <u>Employees</u>

Employees are responsible for reporting any acts of violence or threatening behaviors to their supervisor and to the Human Resources and Development Department.

### 4. <u>Safety and Risk Management</u>

Safety and Risk Management will provide prompt assistance to managers, supervisors, or others as necessary on any matter concerning this policy and procedure.

Additionally, Safety and Risk Management will provide consultative and audit assistance to ensure effective implementation of this policy and procedure.

### 5. <u>Human Resources and Development Department</u>

When disciplinary action is recommended for employees as the result of a workplace violence act or threat, Human Resources and Development will assist managers and supervisors with implementation of Policy <u>HR - 18 - Standards for Performance and Conduct, Corrective Action and Discipline</u>.  In addition, the Human Resources and Development Department and Health and Safety will assist with coordinating on-site workplace violence sessions.  Finally, the Human Resources and Development Department will, as part of its standard reference checking procedure, specifically inquire as to whether a job applicant has a known history of violent behavior.

## <u>APPENDIX A: Violence Prevention Strategies</u>

## <u>APPENDIX B: Types of Workplace Violence</u>

## <u>APPENDIX C: Workplace Security Assessment Form</u>

---

For more information contact <u>Manette Moses</u> or <u>Marjorie Hillson</u>.

00037

# Exhibit "6"

**TO DECLARATION OF TRACY JONASSEN IN SUPPORT OF
PLAINTIFF'S RESPONSE TO DEFENDANT PORT OF SEATTLE'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COMPLAINT**

# DISABILITY CASE MANAGEMENT

## HR-6 as of 02/20/01

### I. STATEMENT OF THE POLICY:

The Port of Seattle will provide all employees and qualified applicants with disabilities reasonable accommodation and return-to-work assistance as determined on a case-by-case basis. Appropriate Port of Seattle personnel will work with the employee or applicant to comply with any and all legal requirements.

### II. APPLICABILITY:

This policy applies to all Port of Seattle employees and qualified applicants for employment. Temporary agency personnel and contractors are excluded from the provisions of this policy.

### III. GUIDELINES:

All accommodation requests (work or non-work related, physical or mental, permanent or temporary) will be managed according to Accommodations Management guidelines. While reasonable accommodation and placement are decided on a case-by-case, point in-time basis, effort should be made to follow the accommodation guidelines to ensure equitable treatment.

### A. PROCESS:

#### Notice of Disabling Condition

1.   In the majority of cases, the employee will notify the Port of Seattle of their need for a reasonable accommodation due to a medical condition that might be a disability. The request should address the employee's physical or mental restriction, the nature of the limitation, along with accompanying documentation from their caregiver. A copy of the request should be forwarded to the Disability Program Manager.

The Equal Employment Opportunity Commission (EEOC) has stated that, in general, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed". However, the Washington State Law Against Discrimination imposes a heightened duty upon the employer that simple notice of an employee's disability is sufficient to trigger the employer's responsibility to accommodate. In addition, Washington State law requires that the employer make an inquiry to an employee if a disability or symptoms suggesting a disability are apparent.

If the medical condition requires time away from work, the Port of Seattle will designate this time as Family Medical Leave Act (FMLA) time off. People Programs will correspond with the employee regarding the FMLA.

2.   Employee and supervisor discuss accommodation possibilities with assistance from the Disability Program Manager.

3.   The supervisor documents notification and dialogue on Port of Seattle Form D-1 *(link to form)*. When this document is complete, the original is forwarded to the Disability Program Manager/Diversity Manager for confidential filing and future reference.

## Assessment at Department and Line of Business Level

The supervisor and employee, and if needed other personnel, will assess the job analysis/essential job functions, physical or mental functional limitations and identify barriers in the workplace.

## Accommodations at Department Level

1.   The employee and the supervisor will develop an accommodation plan. If the supervisor and employee are unable to identify an accommodation, the supervisor must contact the Disability Program Manager to assist with the accommodation process and serve as a consultant and/or case manager.

- Based on medical documentation, the employee may be required to attend an independent medical exam, and/or a performance based physical capacity exam to determine physical ability. The Disability Manager will coordinate all medical exams and correspond with the employee's treating doctor.

2.   At the point an analysis at the department level indicates that a reasonable accommodation cannot be made without compromising the essential job functions, then a referral to People Programs will be made for possible placement assistance. If appropriate, People Programs will then assist the employee with identifying potential employment options.

3.   The preferred source of funding is the employee's organization/subclass.

4.   If the employee's organization is unable to provide funding for necessary accommodations, including placement assistance, the funding source will be elevated to the division level.

## Placement Assistance

1.   Once the determination is made that the employee is unable to perform the essential function of their job with or without accommodation, the Port of Seattle will provide placement assistance (1) until such time that a comparable position is offered to the employee and for which the employee is qualified and able to perform the essential job functions with or without accommodation, and the employee rejects this offer, or (2) until the point continued placement assistance becomes an undue burden.

2.   Moving an employee to a lower classification may be an appropriate action in cases where it appears the employee is no longer able to adequately perform the essential functions of the job despite a conscientious effort and commitment. If both circumstances and opportunity lead a supervisor to consider this alternative, it could be offered as a reasonable accommodation.

3.   For wage employees, provisions of the labor agreement will need to be reviewed to determine applicability.

4.   The Port of Seattle will document all placement assistance efforts and refers those records in the confidential file maintained in the Disability Manager's Office.

## B. RESPONSIBILITIES:

**Disability Manager**

1.   Assume responsibility for involving the appropriate team members on a case by case basis. Potential team members may include: Supervisor/Manager, Senior Manager, Diversity, People Programs, Labor Relations, and Legal.

2.   Ensure that the affected employee is kept apprised of the accommodation process and when the case is resolved.

3.   Ensure that the established procedures are followed.

4.   Notify People Programs to send Family Medical Leave Act notification if the disability condition requires time off from work.

5.   Coordinate independent medical exams and physical capacity exams when necessary.

6.   Ensure the clear transfer of responsibility to People Programs when job placement is appropriate (with a memo indicating hand-off).

7.   Collect and maintain all required documentation.

**Diversity Manager or Diversity Specialist**

1.   Consult with hiring agents and managers regarding accommodations for applicants and new hires with disabilities.

2.   Work with the Disability Manager on a case by case basis to ensure appropriate accommodations are available.

3.   Ensure placement assistance when necessary.

4.   Notify Human Resources and Development to send Family Medical Leave Act notification if the disabling condition requires time off from work.

5.   Assist with searching for alternative employment opportunities when appropriate.

**Labor Relations**

1.   Check labor agreement for wage employees who may be involved in job placement at a lower classification.

2.   Ensure that the labor business agent is informed and kept apprised of wage employee's disability status as needed.

**Supervisor**

1.   Work with employee throughout the accommodation process.

2.   Make a good faith effort to provide a reasonable accommodation.

00017

3.   Document the process during the period of his/her involvement.

4.   Involve Disability Manager, Diversity Manager, Human Resource Representatives as appropriate.

5.   Make an inquiry to an employee if a disability or symptoms suggesting a disability are apparent.

**Employee**

1.   Notify supervisor and/or case manager of disability condition and of any and all changes in condition, and provide physician statement regarding the nature of limitation.

2.   Be responsible for requesting an accommodation and cooperating with management through the accommodation process.

## C. DEFINITIONS:

**What is a "Disability" for purposes of this policy?**

The definition of a "disability" differs significantly between the Americans with Disabilities Act and the Washington State Law Against Discrimination.  Therefore, for purposes of this policy, a disability is defined as one that:

- Is medically cognizable or diagnosable;
- Exists as a record or history; or
- Is perceived to exist, whether or not it exists in fact.

**Family and Medical Leave Act (FMLA):**

FMLA requires the Port of Seattle to provide up to 12 weeks of unpaid, job-protected leave to eligible employees for certain family and medical reasons.

**Reasonable Accommodation:**

A reasonable modification to a job application process that enables a qualified disabled individual to be considered for the position he or she desires; and/or,

A reasonable modification to the work environment, or to the manner or circumstances under which the position is customarily performed, that enables a qualified disabled person to perform the essential functions of that position.

**Job Analysis:**

A detailed narrative description of an employee's job duties, physical activities, and education requirements which lists essential and non-essential functions of the job.  *Essential functions* are tasks that are fundamental to the performance of the job.  *Non-essential functions* are tasks that are marginal to the performance of the job.

**Performance Based Functional Capacity Evaluation (FCE):**

An "FCE" is a comprehensive, objective test of a person's ability to perform work-related tasks.

00018

**Independent Medical Exam (IMEs):**

IMEs are arranged to establish medical facts about the employee's physical/mental condition in relationship to their ability to perform their job.

**Disability Case Management Process**

| Process | Employee | Employee & Supervisor | Supervisor |
|---|---|---|---|
| **Notice of Disabling Condition Requiring Accommodations** | Notify supervisor of disabling condition | | Initiate accommodation dialogue |
| **Accommodation Dialogue** | Present physical or mental restrictions, limitations related to the position; documentation from medical provider. Request accommodation or placement | Discuss accommodation possibilities; contact Disability Manager for assistance | Document notification and dialogue on Form # Send to Disability Manager |
| **Assessment at Department Level** | Cooperate with supervisor and others involved in assessment process. | Develop an accommodation plan.<br><br>If parties are unable to identify accommodation, the supervisor must contact Disability Manager who will serve as case manager or otherwise assist with the accommodation process.<br><br>If analysis indicates that the accommodation cannot be made without compromising the essential job function, then a referral to People Programs will be considered for placement assistance. | Document plan<br><br>Document contact with Disability Manager and transfer of responsibility.<br><br><br><br>Document transfer to People Programs |
| | | | |

**Disability Case Management Process/Key contacts and Accountabilities**

| Disability Manager | People Program Diversity Manager |
|---|---|
| | |

00019

| On the job injuries/illness requiring workers' comp and non work related injuries/illness | Recruitment/Applicants |
|---|---|
| **3 scenarios**<br><br>1) Temp restrictions w/return to full duty<br><br>2) Perm restrictions w/RTW to job w/ accommodation or modifications<br><br>3) Perm restrictions unable to RTW to essential job functions w/ or w/o accommodations | **3 scenarios**<br><br>1) New hires who require an accommodation<br><br>1) Job change so accommodation needs to be reviewed/changes<br><br>3) Placement assistance |
| **Potential team members**<br><br>Supervisor/Mgr<br><br>Senior Mgt.<br><br>People Program<br><br>Legal<br><br>Voc Counselors<br><br>Nurse Case Manager<br><br>Labor Relations<br><br>Diversity<br><br>Employment EAP | **Potential team members**<br><br>Supervisor/Mgr<br><br>Senior Mgt.<br><br>Workers Comp<br><br>Legal<br><br>Voc Counselors<br><br>Nurse Case Manager<br><br>Labor Relations<br><br>Diversity<br><br>Employment EAP |
| **Responsibility**<br><br>Extends to fulfilling workers compensation law/disability law | **Responsibility**<br><br>Extends to providing to disabled employee or applicant the services that are routinely available to other employee or applicants |
| **End point** - Claim closure or placement, and accommodations are provided, or, if | **End point** - Placement of the employee, at point the employee is offered but rejects |

00020

| | |
|---|---|
| accommodation cannot be provided after appropriate period, transfer to People Programs re: termination of employment | placement, or at point placement assistance becomes an undue burden. Decisions are based on operational demands and business necessity. Consult with Legal as necessary. |

For further information contact Rosalee Walz.

00021

(a) For wage positions, a dispatch order will be placed with the appropriate union office. Emergency hires for wage positions must be compatible with labor contract provisions concerning accumulation of worked time toward regular status; i.e., if seniority is obtained after 30 days, the period of employment must be less than 30 days. Teamster employees from Local 174 will not be employed in excess of 45 calendar days, nor be accepted for redispatch to the Port until 6 months have elapsed after layoff from the Port.

(b) Former salaried employees who have worked at the Port may be rehired for emergency assignments for which they are qualified.

(c) Community agencies may be contacted for a referral to fill an emergency position.

(d) If none of the above means is successful, employees from the work unit may be asked to refer acquaintances for consideration.

Emergency hires are limited to 60 days. Extensions must be justified in writing to the Director of Human Resources. In no case will an emergency assignment become a regular Port position without a competitive process.

i. <u>Placement in Connection with Industrial Injury, Job-Related Illness</u>:

In connection with rehabilitation from industrial injury/illness, Port employees or former Port employees who have suffered a bona fide job-related disability while employed at the Port may be assigned to fill appropriate positions without posting. Employees who have become disabled may also be considered under this provision. In any case, if such candidates are unsuitable for available vacancies, posting is required.

j. <u>Consecutive Vacancies</u>:

More than one position may be filled from one posting where subsequent vacancies occur requiring substantially the same qualifications. Job title, location, and schedule may differ. However, salary grade must be the same or lower.

k. The Director of Human Resources may authorize non-competitive placement in selected circumstances where it is in the Port's best interests. Examples may include:

(1) To resolve EEO or employee relations complaints.

(2) To avoid delays in addressing critical and immediate problems in projects or community concerns.

(3) To achieve compliance with affirmative action plans.

(4) To reduce a department's total staffing level through attrition by filling a vacancy from job family candidates and freezing the resulting vacancy for at least a 12month period. In rare cases, inter-departmental selections may be approved with resulting vacancy posted. These must be coordinated with Human Resources and be fully documented.