1

2

3

4

5

6

The Honorable Richard A. Jones

7

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9  TRACY JONASSEN,

10                                        Plaintiff,

11          vs.

12  PORT OF SEATTLE, a municipal corporation,

13                                        Defendant.

14

**CASE NO.  C11-00034 RAJ**

**PLAINTIFF'S RESPONSE TO DEFENDANT
PORT OF SEATTLE'S MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF
PLAINTIFF'S COMPLAINT**

**NOTED FOR:   FRIDAY, APRIL 6, 2012**

15                              **I.  INTRODUCTION**

16          Plaintiff, Tracy Jonassen, has brought a cause of action pursuant to the False Claims Act 31 U.S.C.

17  § 3730(h).  Mr. Jonassen has alleged in his Second Amended Complaint continuing, increasing and ongoing

18  harassment, retaliation, a hostile work environment and disparate treatment by the defendant, the Port of

19  Seattle (hereinafter "POS"), from 2005 to the present.  Mr. Jonassen has further alleged that the alleged

20  wrongful acts of the defendant constitute a unitary, indivisible hostile work environment and retaliation claim

21  that collectively constitute one unlawful employment action.

22          The Second Amended Complaint added State of Washington Common Law claims to the False

23  Claims Act (hereinafter "FCA") whistle blower claim, previously filed.  These claims allege that Mr.

24  Jonassen had justifiably relied on written policies of the defendant pertaining to his status as a whistle blower

25  and report of possible fraud and "governmental misconduct" and that these policies were violated by the

26  defendant. Plaintiff filed this case on January 7, 2011.

27

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 1 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

## II. RELIEF REQUESTED

**1.**      Denial of Defendant Port of Seattle's Motion for Judgment Summary Judgment of Dismissal of Plaintiff's Complaint pursuant to FRCP 56.

## III. SUMMARY OF ARGUMENT

Mr. Jonassen has met his burden and has properly established a primae facie case of retaliation pursuant to 31 U.S.C. 3730(h) and a statutory violation sufficient to survive summary judgment on each of his claims.  He has also established a primae facie case that shows that defendants violated their own written policies, relied upon by Mr. Jonassen, and this violates Washington Common Law.

During his employment with the defendant, plaintiff did file a prior FCA substantive claim pursuant to 31 U.S.C. 3729 on behalf of the United States Government on April 1, 2008.  Prior to that, Mr. Jonassen had taken many acts in furtherance and in anticipation of filing his FCA claim.  Mr. Jonassen's prior FCA claim, filed in this Court under Cause No. C08-0508-MJP, resulted in a tremendous effort on the part of the United States Government and the Department of Justice to investigate Mr. Jonassen's claims. Nonetheless, ultimately, the Department of Justice decided not to intervene in the cause and did not pursue the claims.  A successful FCA lawsuit is <u>not</u> a prerequisite to a FCA Retaliations Claim under 31 U.S.C. 3130(h) as the defendant seems to infer.  *Hutchins v. Wilitz*, 253 F.3d 176 (3rd Cir.), cert. denied (2002, 536 U.S. 906, 153 L.Ed.2d 182 (22 S.Ct. 2360).  *United States ex. rel., Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514 (40th Cir. 1996).

The retaliation and hostile work environment fostered by the defendant has occurred throughout much of his employment by defendant and continues through today.  The actions of defendant violate the anti-retaliation provision of 31 U.S.C. 3730(h) and the defendant's own written policies.[1]

Defendant claims that Mr. Jonassen is not entitled to bring a FCA Retaliation Claim under 31 U.S.C. 3730(h) claiming that Mr. Jonassen had pursued a "meritless" claim under the FCA and therefore retaliation pursuant to the statute cannot be alleged.  The defendant is arguing that Mr. Jonassen was not engaged in protected activity.  The defendant's position in that regard is incorrect and is a misstatement of the law.  The

---

[1] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 14, line 11 through Page 17, line 24.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 2 OF 24

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

Unites States Government, as noted in the Court's previous Order denying defendant's 12(c) motion, expended tremendous effort investigating Tracy Jonassen's claim.  Tracy Jonassen alleged very serious issues amounting to possible fraud.  This was all done in the background context of investigations by the Washington State Auditor and civil and criminal investigations by the federal government pertaining to the POS contracting practices associated with the Third Runway Project.  These are the matters Tracy Jonassen pursued in his FCA complaint.  These are the matters he brought to the POS management's attention.

Defendant relies upon dicta and a very narrow reading of the 9th Circuit opinion in *United States ex. rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996), in making their argument.  *Hopper, supra.,* is factually and procedurally distinguished from the present case.  The holding in *Hopper, supra.,* was based upon a jury's factual determination that the only individual they found to be discriminating against the plaintiff was a single individual supervisor of the defendant employer.  The jury found that the supervisor had not known the plaintiff was engaged in protected activity.  Thus, the jury's verdict for the plaintiff was not established by the evidence as the required element of employer knowledge (of plaintiff's protected activity) had not been established.

The dicta in *Hopper, supra.,* cited by defendant in making their claim that Mr. Jonassen had a meritless FCA claim was not necessary to the Court's result, as is noted above.  The concept of a FCA action as a prerequisite to a 31 U.S.C. 3130(h) whistle blower retaliation suit simply is a short hand reference to the statutory requirements for a 3130(h) claim, i.e, that an employee must not *". . . in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."* [31 U.S.C 3721, et seq.] 31 U.S.C. 3730(h) (emphasis added).

Mr. Jonassen has alleged that he has been and continues to be discriminated against by defendant because of his investigation of, initiation of, testimony for, and/or assistance (to the United States) in the action he did ultimately file in this Court alleging a FCA claim against defendant.  Mr. Jonassen has properly established sufficient facts that he took acts in furtherance of a FCA action and, thus, he is in a protected class.  The factual detail submitted with the declarations filed concomitant with this response establishes

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT DISMISSAL**
**OF PLAINTIFF'S COMPLAINT - 3 OF 24**

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

issues of material facts on each of the required elements.  Additionally, Tracy Jonassen has established a separate cause of action for breach of the POS's written policies based upon Washington Common Law.

## IV.  FACTUAL BACKGROUND

Mr. Jonassen began his employment at the defendant's Seattle-Tacoma International Airport facility (hereby referred to as SEA-TAC Airport) as a Waste Water Treatment Plant Operator at the defendant's Industrial Waste Water Treatment Plant in 2004 (hereby referred to as the IWTP).  Thereafter, as alleged in the second amended complaint, Mr. Jonassen started noticing mechanical and design problems at the IWTP.  The facility did not function as required and failed to adequately treat polluted water prior to discharge into Puget Sound.  This is the facility in which Mr. Jonassen was working at the time.[2]

Mr. Jonassen brought the issue of the IWTP malfunctioning to management.[3]  Mr. Jonassen also brought issues to management in this time period and thereafter pertaining to what he thought was shoddy workmanship and wrongful misappropriation of POS property and POS services by contractors building a new third runway at the SEA-TAC Airport.  The initial complaints were made in 2004.  The complaints increased in 2005 and 2006.  The issues concerning the malfunctioning IWTP came to a head in 2007, 2008 and thereafter.  The IWTP to this day does not work as it was designed.[4]

Much of the funding for this project was provided by the federal government.  The IWTP was a necessary part of the third runway project. Mr. Jonassen observed what he thought was contractors providing shoddy work on the third runway project at high prices with the complicity of management at the SEA-TAC Airport.  Mr. Jonassen knew that the Federal Government had provided much of the funding for the third runway construction. He became concerned United States Government funds were being wasted and it might be evidence of a fraud on the Government.  He was concerned that the POS was paying its contractors with Federal funds for work they didn't perform properly and that POS management was, in fact, conspiring with

---

[2] Jonassen Decl., Page 1, lines 18-26.

[3] Jonassen Decl., Page 1, line 26, through Page 2, line 3:  Cloud Decl., Exh. 1; Dep. Transcript of Paul Price; Page 14, line 6 through Page 15, line 25: and Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet.

[4] Jonassen Decl.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 4 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

the contractors to do so and, essentially, sending the bill to the Federal Government.  Mr. Jonassen set out to investigate the apparent governmental fraud and misconduct perpetrated against the United States.  Mr. Jonassen was doing this for several reasons. These include the fact that as he discovered and reported these issues he was then immediately blamed for the IWTP's poor functioning by the supervisor to whom he repeatedly reported the issues, Randall Sweet. Mr. Sweet was the supervisor of the IWTP and the boiler room.  Both the IWTP and the boiler room are staffed by operating engineers, of which Mr. Jonassen was one.  The work, however, differs substantially between the IWTP and the boiler room.  Tracy Jonassen was also motivated to report what he perceived to be "governmental misconduct" as a result of the POS emphasizing in its written policies to report such conduct.  "Governmental misconduct" is defined broadly in the POS' s policies.  The requirement to report suspected fraud was re-emphasized by an email sent to all employees by the POS's General Counsel, Craig Watson, in January 2008.  This email was in response to a Federal law enforcement criminal investigation pertaining to the POS's practices of illegal contracting practices costing taxpayers many millions of dollars.[5]

The IWTP requires much less physical work then the boiler room.  Mr. Jonassen has chronic pain in his neck as a result of disc herniation received in December 2009 while working in the boiler room.  Because of his physical condition, it is imperative that Mr. Jonassen be reinstated to his former position at the IWTP.[6]

Other managers involved in this matter, besides Randall Sweet, are Paul Price (boiler room lead), Stuart Mathews (Mr. Sweet's supervisor), Gary Christianson (Mr. Mathews' supervisor and Director of Aviation Maintenance for the Port of Seattle), and Gary Schmitt (Director of Labor Relations).  With each new malfunction at the IWTP discovered by Tracy Jonassen and reported to Randall Sweet or others, retaliatory acts were initiated by Randall Sweet and others in the management hierarchy including Paul Price and Stuart Mathews. Thus, Tracy Jonassen, in order to defend himself from the constant, unrelenting retaliation, had to continue to investigate the circumstances involving the malfunctions at the IWTP facility.

[5] Jonassen Decl.

[6] Jonassen Decl., Page 13, lines 18-24.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 5 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

Tracy Jonassen continued to discover and report mechanical malfunctions at the IWTP. The retaliation was usually prompt whenever new issues were discovered.[7]

Mr. Jonassen also continued his investigation into POS contractors misappropriation of POS property and services. The issues pertaining to Mr. Jonassen's complaints about these issues have never been completely resolved and retaliatory acts and a hostile work environment confront Mr. Jonassen at his workplace to the present day. The aggressive stance taken by the POS in litigation is itself retaliatory. Mr. Jonassen has been subject to a hostile work environment and continuous and escalating retaliation throughout the time period running from his initial complaints to management through his filing of his FCA lawsuit and throughout the Department of Justice's investigation and through today.[8] Mr. Jonassen has factual support that he suffered continuing and increasing retaliation, harassment, disparate treatment, and a hostile work environment fostered by the defendant that constitute a unitary, indivisible, retaliatory and hostile work environment.[9]

Plaintiff is alleging that one motive for the retaliation is his actual filing and initiation of the FCA lawsuit itself.

Mr. Jonassen has provided sufficient factual support for his allegation that the defendant knew or should have known that he was engaged in protected activity well before he filed his FCA lawsuit.[10]

In his deposition, Mr. Sweet admitted to many mechanical problems at the IWTP. He also admitted to having known of Tracy Jonassen's complaints about an investigation of the various issues prior to October 25, 2007.

Randall Sweet, prior to becoming the supervisor of the IWTP and boiler room, participated on the

---

[7] Jonassen Decl.

[8] Jonassen Decl.: Cloud Decl., Exh 3; Dep. Transcript of Omayio Moikobu, Page 91, line 1 through Page 97, line 14.

[9] Jonassen Decl.

[10] Jonassen Decl.: and Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez: and Exh. 2; Dep. Transcript of Randall Sweet.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 6 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

design team of the IWTP.[11]  He spent half his time on the IWTP design project for two years.[12]  Mr. Sweet made a major design change.[13]  The change required additional valving in the system.[14]  The valves did not operate properly.[15]  Mr. Sweet admits that Tracy Jonassen raised the issue of the leaking valves with him.[16]

While at the IWTP, Mr. Sweet managed it and the boiler room operations.[17]  Mr. Sweet supervised the contractors building the IWTP.[18]  Mr. Sweet admits that he met at a restaurant with a consultant to discuss design.[19]  The plant was designed by Kennedy-Jenks, built by URS, and commissioned by the POS.[20]  Mr. Sweet apparently commissioned the defective plant.[21]

Mr. Sweet admits that, when Lagoon I reached an elevation of over 2.5 feet, there would be a backflow of contaminated water from Lagoon I to Lagoon III.[22]  He then claims 2.6 feet was the elevation limit.[23]  He admits that, above elevations of 2.6 feet, contaminated water backflowed to Lagoon III.

Mr. Sweet admitted in his deposition that none of the factual allegations made against Mr. Jonassen

---

[11] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 24, lines 3-7.

[12] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 25, lines 6-14.

[13] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 25, line 15 through Page 26, line 5.

[14] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 26, lines 6-8 and lines 15-20.

[15] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 27, lines 8-25.

[16] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 29, lines 2-15.

[17] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 32, lines 3-5.

[18] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 32, line 24 through Page 33, line 3.

[19] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 33, lines 10-22.

[20] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 33, line 17 through Page 34, line 6.

[21] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 34, lines 3-10.

[22] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 42, line 20 through Page 43, line 17.

[23] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 45, line 18 through Page 46, line 12.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 7 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

in his November 20, 2007, disciplinary notice directed to Tracy Jonassen can be established as alleged.[24]

The TOC/BOD analyzers that measure pollution in the IWTP system are inaccurate, with a plus or minus error rate of thirty (30%) percent.[25] Thus, again, POS disciplined Mr. Jonassen based upon inaccurate data. Mr. Sweet could not assert that the leaking valves and backflow problems causing intermixing of contaminated and uncontaminated water had been corrected as of October 25, 2007.[26] Omayio Moikobu, IWTP lead, testified that the valves were not all fixed by the time Tracy Jonassen was disciplined and removed from the IWTP. He testified that the defective valves could have caused contaminated water going into Lagoon III, allegations for which Tracy Jonassen was removed from the IWTP.[27]

Mr. Sweet forbade Tracy Jonassen from accessing information he wanted to prove his innocence relating to the November 20, 2007, disciplinary letter.[28]

Mr. Sweet admits taking reports from Tracy Jonassen about contractor theft and the leaking valve issue prior to October 25, 2007.[29] He also remembers that Tracy Jonassen complained about improper commissioning of the IWTP.[30]

Tracy Jonassen raised the issue of the wheel wash water with Mr. Sweet.[31] Mr. Sweet admits the TOC analyzers didn't function properly.[32] The analyzers cost the POS $40,000.00 a piece.

Tracy Jonassen also raised the issues of fraud and retaliation with Cynthia Alvarez, Stuart Mathews,

---

[24] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 59, line 12 through Page 88, line 6; See also Page 88, line 13 through Page 91, line 5 and Page 96, lines 1-25.

[25] Cloud Decl., Exh. 2; Dep Transcript of Randall Sweet; Page 91, line 6 through Page 92, line 2.

[26] Cloud Decl., Exh. 2; Dep Transcript of Randall Sweet; Page 93, line 11 through Page 94, line 4.

[27] Cloud Decl., Exh. 3, Dep. Transcript of Omayio Moikobu; Page 93, lines 9-23.

[28] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 98, line 7 through Page 99, line 2.

[29] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 99, line 23 through Page 100, line 9.

[30] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 101, lines 21-25.

[31] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 105, lines 3-15.

[32] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet; Page 105, line 16 through Page 106, line 20.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 8 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

Guy Schmitt, John Christianson, Paul Price and Lisa Hornfeck.[33] Cynthia Alvarez also received complaints of violations of POS policies form Tracy Jonassen.[34]   Tracy Jonassen alleged retaliation in intake meeting of April 30.  She reported Tracy Jonassen's allegations of fraud to Gary Schmitt and John Christianson.[35] She relayed Tracy Jonassen's concerns that Randy had lied to Gary Schmitt.[36]   Nothing was done to investigate Tracy Jonassen's claims.[37]  She chose not to investigate the allegation that Mr. Sweet had lied at the Laudermill hearing.[38]  Other complaints of retaliatory conduct were also relayed by Tracy Jonassen to Ms. Alvarez.[39]  She was aware of Tracy Jonassen's FCA lawsuit.[40]   Tracy Jonassen also reported his complaints to Marjorie Hillson, Deputy Human Resources Director.[41]   Both Mr. Schmitt and Mr. Christianson were aware of Tracy Jonassen's complaints.[42]

Ms. Alvarez testified that any manager withholding exculpatory evidence form an employee in a disciplinary action violates POS policy.[43]  She stated managers are to report complaints of harassment to Human Resources.[44]  Ms. Alvarez declined to pursue an investigation of Tracy Jonassen's complaints.[45]

[33] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; page 17, line 25 through Page 18, line 25; Page 18, line 11 through Page 19, line 15; Page 23, lines 21-23.

[34] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 23, line 21 through Page 28, line 9; Page 28, line 14 through Page 42, line 10.

[35] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 42, line 11 through Page 43, line 20.

[36] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 43, line 21 to Page 44, line 11.

[37] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 44 , line 12 through Page 46, line 25.

[38] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 48, lines 11-13.

[39] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 51, line 4 through Page 54, line 2.

[40] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 55, lines 4-8.

[41] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 61, line 23 through Page 64, line 25.

[42] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 66, line 8 through Page 67, line 3.

[43] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 74, line 18 through Page 75, line 7.

[44] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 75, lines 8-18.

[45] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez; Page 77, lines 14-22.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 9 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

1    There is voluminous evidence, both written and oral, to establish Tracy Jonassen's complaints about

2    the IWTP's contractor theft of services and property, and possible fraud and/or government misconduct.

3    Tracy Jonassen also specifically informed defendant through Cynthia Alvarez, Paul Price, Lisa Hornflek,

4    Stuart Mathews, John Christianson, Gary Schmitt and others that he was investigating apparent fraud by the

5    defendant against the United States.  This is established by both written and oral evidence.[46]

6    From the time of his initial complaints forward through the present, Mr. Jonassen has been subject

7    to continuing and increasing retaliation, harassment and a hostile work environment.  The retaliation,

8    harassment and hostile work environment is related to his investigation into apparent fraud of the United

9    States, i.e., the circumstances of the failure of the systems at the defendant's IWTP facility, as well as the

10   contractors for the third runway apparently misappropriating federal government funds meant to build the

11   third runway and POS property and services.  He was concerned that the POS and its contractors on the third

12   runway were defrauding the Federal Government.  Tracy Jonassen's initial written complaint was made in

13   2004.  His concern was that what he was observing was evidence of a scheme to defraud the Federal

14   Government by the POS and its contractors and to misuse government funds.[47]

15   Mr. Jonassen investigated other apparent frauds on the government as well as those pertaining to the

16   third runway.  The circumstances of these investigations are summarized in his complaint in the FCA case

17   filed in this court.  Mr. Jonassen's investigation ultimately led to a FCA Qui Tam lawsuit pursuant to 31

18   U.S.C. 3730.  The case was filed under 2:08-cv-0508-MJP (C08-508 MJP) on April 1, 2008.

19   The filing of the FCA case in 2008 triggered a vigorous multi agency investigation by the Federal

20   Government.  The Department of Justice, the Department of Transportation and Federal Law Enforcement

21   Agencies spent numerous hours and much resources investigating Mr. Jonassen's claims.  Mr. Jonassen's

22   claims were far reaching and encompassed numerous construction projects at the Sea-Tac Airport facility,

23   not just the third runway.  The Department of Justice requested four continuances and investigated over

24   eighteen months.

25   [46] Jonassen Decl.

26   [47] Jonassen Decl.

27

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 10 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

The defendant had also, in the same general time period (2007 and 2008), been excoriated for various violations of State law by the Washington State Auditor during the same general time period for irregularities and slipshod accounting and contracting practices related to Port capital projects at the airport, including the third runway. [48]   The State auditor's report had wide ranging implications for POS.  POS was subject to criminal and civil investigations by the Federal Government.  This was noted in an email of January 2008 sent by Port Counsel, Craig Watson, to all employees.

The POS also instigated their own investigation, headed by former U.S. Attorney for Western Washington, Michael McKay.  The report was published on December 3, 2008.  It reported widespread fraud and governmental misconduct on the part by POS and its' contractors.[49]

Thus, at the time Tracy Jonassen was reporting and investigating fraud at the POS, so was the State Auditor.  Subsequently, Mr. McKay performed his investigation.  All found fraud or illegal practices.  On or about the day that Tracy Jonassen was retaliatory reassigned to another job in the boiler room (January 8, 2008), Mr. Watson alerted employees of the federal criminal investigation through his E-mail.  Tracy Jonassen filed his substitutive FCA lawsuit on April 1, 2008.

Shortly afterward, in May of 2008 Tracy Jonassen reported to Cynthia Alvarez of POS's Human Relations that he was investigating fraud at the POS and he was being retaliated against by the POS as a result.[50]   He reported that Randy Sweet had concocted false evidence to justify his transfer from the IWTP to the boiler room.[51]   This transfer was retaliation for Tracy Jonassen's reports of contractor theft of the POS property and services, as well as for his reports of the failure of the mechanical system at the IWTP.[52]

The retaliation continues to the present time, Mr. Jonassen has substantial factual support to establish

---

[48] Cloud Decl., Exh. 5; a portion of the WA State Auditor's Office (http://www.sao.wa.gov) Performance Report No. 100008 issued on December 20, 2007.

[49] Cloud Decl., Exh. 4; Report of The Special Investigative Team dated December 3, 2008.

[50] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez.

[51] Cloud Decl., Exh. 6; Dep. Transcript of Cynthia Alvarez.

[52] Jonassen Decl.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 11 OF 24**

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

1    continuing retaliation.  The summary provided in the responsive materials has only stressed the highlights

2    due to time and space restrictions.  The defendant's actions constitute a unitary, indivisible unlawful

3    employment action.  He is currently employed in the defendant's SEA-TAC boiler room.

4    ## V.  LEGAL AUTHORITY

5    **A.    MR. JONASSEN HAS PROPERLY ESTABLISHED FACTS PURSUANT TO 31 U.S.C.
6    3730(H) SUFFICIENT TO SURVIVE DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT.**

7    In the Ninth Circuit, plaintiff, in a FCA Retaliation Claim, must allege and establish the following

8    elements: 1) That he engaged in protected activity;  2) that the employer knew or should have known that

9    the plaintiff was engaged in protected activity; and 3) that the employer discriminated against the plaintiff

10   because he engaged in protected activity.  *Mendiando vs. Centinela Hosp. Medical Center*, 521 F.3d 1097,

11   1103 (9th Cir. 2008), (citing *Moore vs. Cal. Inst. of Tech. Jet Propulsion Lab*., 275 F.3d 838, 845 (9th Cir.).

12   As to element one, a plaintiff does not need to plead and show that the defendant actually submitted

13   a false claim.  *Mendiando, supra*., at 1103 (citing *Graham County Soil and Water Conservation Dist. vs.*

14   *United States ex. rel. Wilson*, 545 U.S. 409, 416-417, 125 S. Ct. 244, 162 L.Ed. 2d 390 (2005)).  Mr. Jonassen

15   has produced factual support sufficient to satisfy the first element.  He reasonably believed that the defendant

16   was defrauding the Federal Government and he did something about it; i.e. report it to his supervisors and

17   investigated it further.  *Mendiando, supra.*  Of course, Mr. Jonassen went much further and filed a FCA

18   lawsuit.  *Mendiando, supra*., unequivocally states that a plaintiff has a valid FCA retaliation claim based

19   upon his membership in the protected class if he reasonably believed that his employer was possibly

20   committing fraud against the government, and that he investigated the suspected fraud.  That is all that is

21   required to be pled by a whistle blower plaintiff to be considered to have been engaging in protected activity.

22   The factual support establishing Tracy Jonassen's actions constituting protected activity is

23   voluminous and includes written and oral reports to his supervisors about contractor misappropriation of

24   property and service; failure of numerous mechanical devices at the IWTP; his complaint about contractors

25   receiving sewage treatment services for "wheelwash" water and other factual details established herein

26

27

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 12 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1  formerly establish Tracy Jonassen's membership within the protected class.[53]

2  The retaliation section of the FCA protects employees who have acted "in furtherance of an action"

3  under the FCA.  Specific awareness of a FCA on the part of the plaintiff is not required.  However, the

4  plaintiff must be investigating matters which are calculated or reasonably could lead, to a FCA action.

5  *United States ex. rel. Hopper v. Anton, Supra.*, 91 F.3d at 1269.  Case law discussions on what is "protected

6  activity" often overlap with the second prong, the "notice to the employer" element.  In any event, the Courts

7  have tended to take a broad view of what constitutes protected activities "in furtherance of" an action under

8  the FCA. 22 C.O.A.2d 217 (§ 6).  What constitutes "protected conduct" is a fact specific inquiry.  *Hutchins*

9  *v. Wilentz, Goldman and Spitzer, Supra.*, 253 F.3d 176, at 186 (3rd Cir. 2001), cert. denied, 536 U.S. 906, 122

10  S. Ct. 2360, 153 L.Ed.2d 182 (2002).  Internal reporting and investigation of an employer's potentially false

11  or fraudulent claim is protected activity.  *Hutchins v. Wilentz, Goldman and Spitzer, Supra.*, 253 F.3d 176,

12  at 186-7 (3rd Cir. 2001).  Mr. Jonassen clearly has established that he engaged in "protected activity."

13  In regards to element two, Mr. Jonassen has alleged in his complaint that the defendant knew that

14  he was engaged in protected activity.  The factual support alleged by Tracy Jonassen is voluminous.  It

15  includes numerous instances of verbal and written complaints to his supervisors.  He alleges that he

16  complained to defendant's supervisors numerous times about what he thought might be various frauds

17  perpetrated on the Federal Government, most pertaining to the Port's third runway expiring project.  He

18  alleges that he ultimately filed his FCA lawsuit and that he has again been retaliated against as a result.  Mr.

19  Jonassen alleges that he voiced his concerns about the POS and contractor fraud of the Federal Government

20  at the POS throughout his ordeal at the POS.  His first complaint in that regard was made as early as 2004.[54]

21  Mr. Jonassen has alleged that the retaliation continued, even after the filing of the FCA suit under

22  Case #C08-0508-MJP in 2008.  There can be no doubt that, as to the retaliation that is alleged to be

23  happening at present, the defendant had notice that Mr. Jonassen has engaged in protected activity.  Mr.

24  Jonassen has satisfied element two of the required allegations.

25  [53] Jonassen Decl.

26  [54] Jonassen Decl.

27

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 13 OF 24**

Finally, the third element is that Mr. Jonassen must allege that his employer discriminated against him because he engaged in protected activity.   Mr. Jonassen's has unequivocally established such discriminating treatment.[55]

To summarize, Mr. Jonassen has alleged and introduced factual evidence in support thereof that he was engaged in protected activity, that the defendant knew that he was engaged in protected activity, and that his employer discriminated against him as a result.

The defendant relies upon the case of *Hopper vs. Anton*, 91 F.3d 1261 (9th Cir. 1996) in support of its motion for summary judgment dismissal based upon the defendant's claim that Mr. Jonassen has failed to establish facts sufficient to pursue a section 3730(h) violation.   Defendant is essentially arguing that Mr. Jonassen did not engage in protected activity.   The defendant is asking for a factual resolution.   Tracy Jonassen has introduced sufficient factual testimony to establish issues of material facts on each of the elements.   Thus, the issue cannot be resolved at Summary Judgment.

In *Hopper, Supra.*, both the facts of the case and the procedural status differ from the present case.

The Court of Appeals decision in *Hopper, Supra.*, reviewed the Trial Court's decision granting the defendant Los Angeles School District Summary Judgment on the plaintiff's FCA claim.   The Court of Appeals also reviewed the Trial Court's denial of the defendant's motion for judgment as a matter of law after plaintiff's successful retaliation trial in District Court.

Procedurally, the case in Hopper is quite different from the present case.

In *Hopper, supra.*, the Court of Appeals reversed the Trial Court's denial of the defense motion for judgment as a matter of law after verdict because the Court of Appeals determined the Jury's verdict finding retaliation was not supported by the evidence produced in Court.   The jury had found that Ms. Hopper had been retaliated against by a single individual defendant named Thompson.   However, the facts in the record did not demonstrate that Ms. Hopper had given any indication to Thompson that she was investigating the School District for fraud.   Therefore, Hopper's claim failed for insufficient evidence in the record.

As a result of Ms. Hopper's failure to demonstrate at trial that she had given an indication to

---

[55] Jonassen Decl.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 14 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

Thompson that she was investigating the School District for defrauding the Federal Government she could not show the required scienter element that her employer had prior knowledge that she was investigating fraud. Randall Sweet knew that Tracy Jonassen had complained about failing systems at the IWTP and that he had complained about contractor theft of POS property and services. In the present case, Mr. Jonassen specifically indicated to the defendant that he was investigating the defendant for defrauding the Federal Government this was accomplished by Tracy Jonassen's report to Cynthia Alvarez. Said report was noted by Ms. Alvarez in POS records. These records and reports of her conversations with Tracy Jonassen were forwarded to senior managers, Stuart Mathews, John Christianson, Gary Schmitt and others. Mr. Jonassen further alleges that the defendant was aware or should have been aware that he was investigating fraud of the POS and the Federal Government prior to his explicit report of his fraud investigation in April 2008. Consequently, *Hopper, supra.*, is distinguishable from the present case.

*Hopper, supra.,* also indicated that, upon the record before it, the plaintiff could not be brought within the class of persons protected by 31 U.S.C. 3730(h) because ". . . the record quite clearly shows Hopper was merely attempting to get the School district to comply with Federal and State regulations. Her numerous written complaints, seventy letters and over fifty phone calls were all directed towards this end. She was not trying to recover money for the government, she was attempting to get classroom teachers to perform the IEP evaluation sessions. She was not investigating fraud." In light of the fact that there was insufficient evidence to establish a retaliation claim, this portion of the ruling is dicta.

In the present case, Mr. Jonassen was quite clearly investigating fraud.

**B.      THE PLAINTIFF DOES NOT HAVE TO SHOW THE FILING AND SUCCESSFUL RESOLUTION BY DEFENDANT OF A FALSE CLAIM SUIT TO ESTABLISH THAT HE WAS IN A PROTECTED CLASS.**

The defendant concedes that only three elements require factual support pursuant to 31 U.S.C. 3730(h) for a primae facie case of retaliation pursuant to the statute. Yet, defendant continues to try to interject a required element into its argument that might be required for an underlying substantive FCA claim, but it clearly is not required of a whistle blower retaliation claim. Defendant's brief argues "Jonassen does not allege any facts that the Port submitted a False Claim for payment to the government." The defendant

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 15 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

is arguing for an element that is not required in a whistle blower complaint.  No such required element exists.

*Mendiando vs. Centinela Hosp. Medical Center*, 521 F. 3d 1097 (9th Cir. 2008).  31 U.S.C. 3730(h), by its

terms, protects any employee who takes *"lawful acts . . . in furtherance of an action under this section,*

*including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under*

*this section . . ."*

      Mr. Jonassen clearly has established that he is in the protected class of persons who took lawful acts

in furtherance of a FCA action, including his investigation, initiation of a FCA suit, and his testimony to the

government during the Department of Justice investigation that occurred when the suit was filed.

      As noted above, there is no necessity to allege that the POS submitted a false claim for payment to

the government in the plaintiff's complaint for whistle blower retaliation under FCA.  It is not even necessary

that a Quit Tam action be filed.

> "The courts have rejected a requirement that a *qui tam* action actually be filed or be
> expressly contemplated. U.S. ex rel. Yesudian v. Howard University, 153 F.3d 731, 128 Ed.
> Law Rep. 1030 (D.C. Cir. 1998); Childree v. UAP/GA CHEM, Inc., 92 F.3d 1140 (11th Cir.
> 1996); Neal v. Honeywell, Inc., 33 F.3d 860, 864-65 (7th Cir. 1994); Sparks v. Lockhead
> Martin, 205 F.3d 1338 (5th Cir. 1999); X Corp. v. Doe, 816 F. Supp. 1086, 1095-96 (E.D.
> Va. 1993). The relator need not have "already have discovered a completed case." U.S. ex
> rel. Yesudian v. Howard University, 153 F.3d 731, 739, 128 Ed. Law Rep. 1030 (D.C. Cir.
> 1998). As stated by the Court of Appeals in *Yesudian*:
>
> > To the contrary, § 3730(h) expressly includes "investigation for . . . an action filed
> > or to be filed" within its protective cover. This manifests Congress' intent to
> > protect employees while they are collecting information about a possible fraud,
> > before they have put all the pieces of the puzzle together. See Neal v. Honeywell,
> > Inc., 33 F.3d 860, 864 (7th Cir. 1994). Indeed, it is for this reason that courts have
> > held employees' activities protected although they have not filed *qui tam* suits.
> > See Neal v. Honeywell, Inc., 33 F.3d 860, 864-5 (7th Cir. 1994); Childree v.
> > UAP/GA CHEM, Inc., 92 F.3d 1140, 1144, (11th Cir. 1996); U.S. ex rel. Ramseyer
> > v. Century Healthcare Corp., 90 F.3d 1514, 1522 (10th Cir. 1996).  And it is for
> > this reason that the district court erred in holding Yesudian's conduct was
> > unprotected because "he never initiated . . . a private *qui tam* suit . . ." And
> > protected conduct element of such a claim does not require the plaintiff to have
> > developed a winning *qui tam* action before he is retaliated against.  See S. Rep.
> > No. 99-345, at 35, reprinted in 1986 U.S.C.C.A.N. at 5300; U.S. ex rel. Ramseyer
> > v. Century Healthcare Corp., 90 F.3d 1514, 1522 (10th Cir. 1996).  It requires only
> > that the plaintiff have engaged in "acts . . . *in furtherance of* an action under this
> > section." 31 U.S.C.A. § 3730(h) (emphasis added) . . . it is sufficient that a
> > plaintiff be investigating matters that "reasonably could lead" to a viable False
> > Claims Act case . . . .

U.S. ex rel. Yesudian, 153 F. 3d 731, 739 (citing Childree v. UAP/GA CHEM, Inc., 92 F.3d

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 16 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1140, 1146 (11th Cir. 1996) (requiring only "distinct possibility" of suit); U.S. ex rel. Hopper v. Anton, 91 F.3d 1261m 1269, 111 Ed. Law Rep. 676 (9th Cir. 1996) (holding that "plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable FCA action"); Neal v. Honeywell, Inc., 33 F.3d 860 (7th Cir. 1994) (holding that 33 U.S.C.A § 3730(h) covers situation where litigation was a "distinct possibility" or "could be filed legitimately").  Nor is the plaintiff required to have gathered all of the evidence by the time of the retaliation. U.S. ex rel. Yesudian v. Howard University, 153 F.3d 731, 739-743, 128 Ed. Law Rep. 1030 (D.C. Cir. 1998).

The plaintiff need not have actual knowledge that the investigation could lead to False Claims Act suit.  U.S. ex rel. Yesudian v. Howard University, 153 F.3d 731, 739-743, 128 Ed. Law Rep. 1030 (D.C. Cir. 1998) citing, Childree v. UAP/GA CHEM, Inc., 92 F.3d 1140, 1143, 1145-46 (11th Cir. 1996); U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1269, 111 Ed. Law Rep. 676 (9th Cir. 1996); Neal v. Honeywell, Inc., 33 F.3d 860, 864 (7th Cir. 1994) (noting that plaintiff was not informed that she could file a *qui tam* action).  Indeed, specific awareness by the plaintiff of the False Claims Act is not required. U.S., ex rel. McCarthy v. Straub Clinic and Hosp., Inc., 140 F. Supp. 2d 1062 (d. Haw. 2001) (citing U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1269, 111 Ed. Law Rep. 676 (9th Cir 1996)).

The showing necessary to demonstrate the casual aspect of a prima facie case is not onerous; the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated."  The plaintiff must at least establish that the employer was actually aware of the protected activity when it took adverse employment action against the plaintiff.  Mann v. Olsten Certified Healthcare Corp., 49 F. Supp. 2d 1307, 1317 (M.D. Ala. 1999) (quoting Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997)).

False Claims Act Employer Retaliation, 22 COA 217 at 230-231.

Jonassen has much evidence that he investigated and reported to his supervisors his investigation. He subsequently initiated a FCA claim alleging widespread misuse of Federal funds in connection with defendant's third runway project and other capital projects at Sea-Tac.  This activity comfortably fits within 31 U.S.C. 3730(h)'s protected class of whistle blowers.  The requirements to establish a primae facie FCA retaliation action are not onerous.  False Claims Act Employer Retaliation, 22 COA 217 at 229-231.  There is certainly a significant "nexus" alleged between Mr. Jonassen's investigation as to possible fraud of the Federal Government by defendants and his retaliation claim.

By filing his FCA investigation, Mr. Jonassen triggered a vigorous federal investigation into the fraud he reported.  This alone is enough to place Mr. Jonassen into 31 U.S.C 3130(h)'s protected class.  See e.g., *Eberhardt v. Integrated Design Const. Inc.,* 167 F.3d 861, 867 (4th Cir. 1999) (finding that "investigatory actions" can rise to the level of protected activity "regardless of whether a "qui tam" action is ever filed; *Neal v. Honeywell, Inc.,* 33 F.3d 860 (7th Cir. 1994).  ("The statute expressly covers investigatory activities proceeding litigation.  What [the plaintiff] did, supplying information that set off an investigation, fits

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 17 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

comfortably into this category.")

Mr. Jonassen went far beyond the activities of the plaintiffs in *Eberhardt, supra.,* and *Neal, supra.,* as he investigated and initiated a FCA lawsuit that triggered a sixteen plus month investigation involving investigating and litigation sections of the Department of Transportation and the Department of Justice. He clearly fits comfortably within 31 U.S.C. 3730(h)'s protected class.

The defendant relies upon the United States, ex.rel. *Brooks v. Lockhead Morton Corp.,* 423 F. Supp.2d 522. In *Brooks, supra.,* an employee reported to a government agent that his employer was failing to perform quality assurance audits that were required by a government contract. The court found the mere reporting of the non-performance of a contractual duty was not protected activity. Likewise, in *Zahodnock v. International Briner Mechanics Corp.,* 135 F.3d 911, also relied upon by defendants, the plaintiff "merely informed a supervisor of the [mischarging] problem and sought confirmation that a correction was being made." *Id.* At 914. These cases are distinguished from the present case. Mr. Jonassen took numerous steps, beyond those described in *Brooks, supra.,* and *Zahodnock, supra.*

A similar argument was made by the defendant in *Glynn v. EDI Corporation,* 536 F. Supp.2d 594 (2008) (Dist. Ct. Maryland). The court rejected the argument because Plaintiff Glynn had investigated and reported his company's providing of malfunctioning military equipment to the government.

Mr. Jonassen has factual support for his allegations involving the IWTP, which was paid for substantially by federal funds. He reported his concerns to the Federal Government, as well as his supervisors.

Mr. Jonassen exposed a culture of corruption at defendant's Sea-Tac Airport facility where contractors were allowed to appropriate goods and services from the defendant, who then recovered funds to pay from these frauds from the Federal Government's largess in providing funding for defendant's third runway project.

Defendant's are trying to repackage apparent fraud as a simple regulatory or contractual oversight. As the court in *Glynn, supra.,* stated:

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 18 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

Many frauds can be repackaged by their perpetrators as mere breaches of contract. Imagine, for example, a company that contracts with the government to provide gold bars at a cost of $50 an ounce. That company tenders bars made of cheap alloy metal and submits an invoice for the full contract price. Under such circumstances, has a fraud been perpetrated and a false claim submitted, and is investigation of those actions thus protected by the FCA? Or are the actions a mere failure to fulfill a contract requirement, and any investigation completely unprotected by federal law?

These questions require an exercise in line-drawing. Surely, mere technical matters, Such as the failure to perform quality audits in *Brooks* can be regarded as nonprotected contractual requirements. However, to vindicate Congressional intent and aid the government in the discovery of false claims, more substantive failures 612*612 must be termed protected investigation of fraud. Here, Glynn's investigation and reporting of his findings to government agents is clearly protected activity. Defendants emphasize that Glynn never saw the government contracts, and thus never knew if false claims were being submitted. But this argument is a paper tiger, as it is clear that "there is no requirement that to be protected, a plaintiff must have gathered all of the evidence by the time of the retaliation." *U.S. ex rel. Yesudian,* 153, F.3d at 740. Otherwise, a company could simply shield itself from the FCA's retaliation provisions by keeping its employees in the dark about contractual specifications.

The purpose of the FCA's retaliation provisions was to "assure those who may be considering exposing fraud that they are legally protected from retaliatory acts." S.Rep. No. 99-345, at 34, *reprinted in* 1986 U.S.C.C.A.N. at 5229. What Glynn allegedly did certainly counts as "considering exposing fraud," at least in light of the information he had at the time. Ultimately, the FCA "expressly covers investigatory activities preceding litigation. What [the plaintiff] did, supplying information that set off an investigation, fits comfortably into this category." *Neal,* 33 F.3d at 864. Accordingly, defendants' motion to dismiss the FCA claim on this basis is denied.

The defendant is trying to ignore the allegation of possible fraud made by Mr. Jonassen and instead relabel his allegations as contractual or regulatory issues only. Defendant's myopic self serving interpretation of 31 U.S.C. 3730(h) would severely curtail the intended scope of the FCA whistle blower protections of 31 U.S.C. 3730(h). It would chill and discourage employee investigations of possible fraud for fear they would face narrow technical definitions of what constitutes possible fraud. "The emphasis of the [FCA retaliation] claim is on the employee's protected action and whether the employer retaliated against the employee because of that action. The fact that the claim arises from an investigation of potential fraud does not alter its nature as a retaliation claim." *Mendiando vs. Centinela Hosp. Medical Center*, 521 F. 3d 1097 (9th Cir. 2008).

## C.   <u>MR. JONASSEN RELEASED NO CLAIM</u>

POS claims Tracy Jonassen released any claim he had pursuant to an agreement made between POS

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 19 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

and the Operating Engineers Union, to which Tracy Jonassen belongs.

The "agreement" is dated January 4, 2008, and was negotiated between POS and the Union.  Tracy Jonassen was presented the agreement as a "done deal" and that he had no choice but to accept.[56]  He had been threatened repeatedly with termination.[57]

Tracy Jonassen never thought the removal was permanent.

In any event, the January 4, 2008, agreement did not take affect until January 8, 2008.  Morever, the evidence purportedly relied upon by POS was concocted by Randall Sweet.[58]

Tracy Jonassen made prompt attempts to rectify the situation involving his transfer from the IWTP by reporting to Cynthia Alvarez of POS Human Resources in April of 2008 that the evidence relied upon to support his disciplinary action was false.

It was concocted and/or exagerated by Randall Sweet.  POS can establish none of the allegations made by Randall Sweet as factual.

Nonetheless, POS refused to rectify the retaliatory act of Randall Sweet and his supervisors.  This, despite the fact that Cynthia Alvarez admitted that such false evidence, produced by a manager to frame an employee, violates POS's anti-harassment policy.  Tracy Jonassen has testified to facts sufficient to establish his FCA retaliation claim.

The time parameters of the purported agreement are not specified.  Tracy Jonassen never understood the purported agreement to be permanent transfer from the IWTP.  Stuart Mathews specifically told him later that he might have another opportunity to bid into a job at the IWTP.  Tracy Jonassen asserts he was forced to sign the document presented to him.  The agreement had been made independent of him, between the Union and the POS.  He questions the authenticity of the document, as well.

**D.   MR. JONASSEN'S CLAIM IS NOT TIME BARRED.**

The defendant posits that 31 U.S.C. 3730(h)(3) and RCW 4.16.080(2) are the appropriate Statue of

---

[56] Jonassen Decl.

[57] Jonassen Decl.

[58] Cloud Decl., Exh. 2; Dep. Transcript of Randall Sweet.

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 20 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

Limitations to apply in this case. Plaintiff alleges a continuous pattern of retaliatory contact by the defendant through the present. In the Second Amended Complaint filed on August 30, 2011, the plaintiff makes clear that the harassment was part of an indivisible whole.

In Washington, it is clear that in workplace discrimination or retaliation claims based on a hostile work environment and the associated harassment thereto of disparate individual discriminatory acts form a unitary, indivisible hostile work environment claim for Statue of Limitation purposes. Thus, under Washington law it is only necessary for one act that contributes to the claim to have occurred within the filing period. Most importantly, the entire time period of the hostile work environment can be considered for the purposes of determining liability. *Antonius vs. King County* 153 Wn. 2d 256, 103 P.3d 729 (2004).

Mr. Jonassen remains employed by the defendant and has alleged a continuing hostile work environment and associated ongoing retaliatory acts by defendant. It is a question of fact as to whether there was a continuing indivisible violation by the defendant of its' duty to provide a workplace free from a hostile work environment and retaliation. *Martini vs. Boeing*, 88 Wn. App. 442, 945 P.2d 248, review granted 134 Wn. 2d 1019, 958 P.2d 316, affirmed and remanded 137 Wn. 2d 357, 971 P.2d 45. Thus, if the defendant persists in relying upon Statue of Limitations defense, it will be a matter for the Jury to decide whether or not the pattern of discriminatory acts constitute a pattern of acts that become a unitary, indivisible hostile work environment for Statute of Limitations purposes. In any event, even if the Court decides, after a weighing of the facts, that the alleged discriminatory acts are not part of a indivisible whole the plaintiff's complaint has alleged discriminatory and retaliatory acts within the three (3) years prior to plaintiff's filing of this action. Thus, defendant's motion could not be granted for those acts occurring within the three (3) years prior to the filing of the complaint even if the Court does not accept plaintiff's "indivisible" hostile work environment claim.

*Antonius vs. King County*, *Supra*, relied heavily upon the United States Supreme Court's holding in *National Railroad Passenger Corporation vs. Morgan*, 122 S. Ct. 2061, 536 US 101 (2002). In *Morgan, Supra*, the Court held that hostile work environment claims typically tend to constitute one "unlawful employment practice". Thus, it does not matter that some of the component acts of the hostile work

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 21 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

environment claim fall outside the statutory time period.  As long as at least one of the acts contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered for purposes of determining liability and assessing damages.  Therefore, the Court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practices, and if so, whether any acts fall within the statutory time period.  Whether or not the individual acts that are alleged may be part of one indivisible claim is a question of fact.  The three year limitation period of 31 U.S.C. 3730(h)(3) (enacted in 2009), does not appear to have altered the *Morgan's, supra,* analysis pertaining to continuing discrimination commencing before the three year statute runs, yet continuing thereafter.

In this case, pursuant to both the original complaint and the second amended complaint the plaintiff has alleged that the acts of the defendant are part of an indivisible whole encompassing one unlawful employment action.  He also alleges that the unlawful employment actions alleged in his complaint(s) are ongoing and some have occurred within the three (3) years prior to his filing the complaint.  That is a factual distinction between the present case and the case of *United State ex. rel. Marchese vs. Cell Therapeutics, Inc.*, No. C06-168MJP, 2007 U.S. Dist. LEXIS 65952.

In *Marchese, Supra.*, the plaintiff could not allege any retaliatory acts within the three (3) years prior to filing his complaint.  Therefore, his action was time barred.  Mr. Jonassen has alleged retaliatory acts in the three (3) years prior to his filing the complaint alleging retaliation contrary to 31 U.S.C. 3730(h).

Tracy Jonassen's State Common Law claim is subject to RCW 4.16.040, the six year limitation for actions on written contract.

**E.     TRACY JONASSEN WAS DAMAGED.**

Tracy Jonassen suffered financial damages as a result of being transferred from the IWTP.  His financial damages continue to mount as he remains in a position with a lower earning capacity, as a result of less overtime, while employed at the boiler room.  His financial damages have been more specifically calculated by William Brandt, CPA.[59]

---

[59] Jonassen Decl., Exh. 7

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DISMISSAL OF PLAINTIFF'S COMPLAINT - 22 OF 24**

**LAW OFFICE OF DOUGLAS R. CLOUD**
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

Tracy Jonassen has also suffered physical injury to his neck as a result of being set up for injury by the POS. This is an item of damage recoverable under the statue. 31 U.S.C. 3730(h)(1) specifies that an employee is entitled to all relief necessary to make the employee whole.

Tracy Jonassen has suffered emotional loss as a result of his job related retaliation. He sought treatment through Brian Tingley, MSW, a therapist, during his ordeal.

Additionally, Tracy Jonassen has suffered discrimination and disparate treatment by being reassigned to the IWTP. He was disciplined based upon the false testimony of Randall Sweet. The purported overflow alleged by Mr. Sweet cannot be established to have occurred. Another IWTP operating engineer actually had earlier caused an overflow of exactly the amount of gallons alleged to have been caused by Tracy Jonassen, yet no discipline was initiated against this operating engineer. This is further evidence of discrimination and disparate treatment.

## F.    **JONASSEN IS ENTITLED TO PUNITIVE DAMAGES.**

31 U.S.C. 3730(h) allows for punitive damages in the form of two times actual damages. The pertinent part of the statute read as follows:

> *"(2) **Relief.—** Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection."*

Thus, Tracy Jonassen is entitled to reinstatement at the IWTP and to <u>twice</u> the amount of all special damages proven, including attorney fees.

## G.    **JONASSEN IS ENTITLED TO DAMAGES FOR HIS NECK INJURY.**

Defendant is attempting to defeat a federal statutory claim by raising a Washington statute as a defense. POS is apparently unaware of the supremacy clause within the United States' Constitution. Federal law is supreme to State law.

31 U.S.C. 3730(h)(1) specifically allows damages for Tracy Jonassen's neck injury. It reads as follows:

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 23 OF 24**

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

*"(1) **In general.—** Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."*

"All relief necessary" to make Tracy Jonassen whole includes an award of damages for any physical or emotional injury sustained as a result of retaliatory discrimination.  The Federal Government does not prostate itself to state laws.

## VI.  CONCLUSION

Mr. Jonassen has, in his Second Amended Complaint, alleged the following:  1) That he was engaged in protected activity; 2) that the defendant knew or should have known that he was engaged in protected activity; and 3) that he was discriminated against as a result.  He has submitted sufficient factual testimony on each of the three elements sufficient to survive a motion for summary judgment.  Additionally, Tracy Jonassen has demonstrated a breach of the POS's own policies and resultant damages.  That is all Mr. Jonassen has to do to survive a motion for summary judgment.  The Defendant Port of Seattle's Motion for Summary Judgment Dismissal of Plaintiff's Complaint should be denied.

**DATED** this 2nd day of April, 2012.

**LAW OFFICE OF DOUGLAS R. CLOUD**

/s/ Douglas R. Cloud
**DOUGLAS R. CLOUD, WSBA #13456**
Attorney for Plaintiff

## DECLARATION OF SERVICE

The undersigned declares as follows:

On this day the undersigned, an employee of Douglas R. Cloud, Attorney at Law, Attorney for Plaintiff, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: The attorneys of record herein for Defendant, Timothy G. Leyh and Shane P. Cramer, of the Law Offices DANIELSON, HARRIGAN LEYH & TOLLEFSON LLP, at 999 Third Ave, Ste 4400, Seattle, Washington 98104, and I certify that I have also forwarded a copy of this document by E-mail and/or by facsimile on this date and/or by ABC Legal Services for delivery.

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated at Tacoma, Washington this 2nd day of April, 2012.

/s/ Carrie L. Marsh
**CARRIE L. MARSH**

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT DISMISSAL
OF PLAINTIFF'S COMPLAINT - 24 OF 24

LAW OFFICE OF DOUGLAS R. CLOUD
901 South "I" St., Ste. 101
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376