HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRACY JONASSEN,

    Plaintiff,

v.

PORT OF SEATTLE.

    Defendant.

CASE NO. C11-34 RAJ

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This matter comes before the court on defendant Port of Seattle's ("POS" or the "Port") motion for summary judgment. Dkt. # 41. Plaintiff Tracy Jonassen alleges two claims against the Port: (1) retaliation in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and (2) breach of the Port's written policies. Dkt. # 23 (Second Am. Compl.). In its reply, the Port moves to strike plaintiff's response for failure to comply with the formatting requirements of Local Rules W.D. Wash. CR 10(e)(1), or to strike everything after page 22, line 3. Dkt. # 50 at 1 n.1. On April 24, 2012, after the close of briefing, plaintiff filed a motion seeking leave to file an amended response in conformity with the Local Rules. Dkt. # 54. The Port did not respond to plaintiff's motion, which the court construes "as an admission that the motion has merit." Local

Rules W.D. Wash. CR 7(b)(2).  Accordingly, the court GRANTS plaintiff's motion to amend its response to conform to the Local Rules.  Dkt. # 53.  The court has only reviewed plaintiff's amended response in connection with this order.  Dkt. # 54-2.  The court also notes that it has disregarded the Port's "Praecipe," filed three days before oral argument on August 28, 2012.  The Praecipe attaches deposition testimony referenced in the Port's motion.  The deposition testimony was "inadvertently omitted" from the excerpts provided to the court on March 15, 2012.  The Port could have brought this evidence to the court's attention earlier with the exercise of reasonable diligence.

Having considered the memoranda, exhibits, oral argument, and the record herein, the court GRANTS the Port's motion for summary judgment.

## II. BACKGROUND

Plaintiff has been employed by the Port since 2004, serving a portion of this time as a Waste Water Treatment Plant operator.  Dkt. # 48 (Jonassen Decl.) ¶ 2.  Plaintiff's responsibilities included operating certain mechanical or water treatment processes in the Seattle-Tacoma International Airport Industrial Waste Treatment Plant ("IWTP").  *Id.*  During the course of his employment, plaintiff uncovered evidence that the IWTP was not operating properly, resulting in effluent discharges into the Puget Sound Waterway, contrary to the IWTP's National Pollution Discharge Elimination Systems ("NPDES") permit.  *Id.* at ¶ 3.  Plaintiff notified management personnel of the malfunctioning of the IWTP and associated systems.  *Id.*  Plaintiff also complained about contractors wrongfully using and/or stealing POS property and tools, and about the contractors using the "wheel wash" system to process contaminated water at no cost to the contractor.  *Id.* ¶ 4.  The wheel wash systems were erected and operated by the contractors that were contracted to build the third runway.  *Id.*  Many heavy trucks were used on the third runway project, and the contractors were required to have mud and dirt washed off the vehicles' tires before leaving the job site for public roads.  *Id.*  The chemical used in the wheel wash solution sprayed on the truck tires was piped and trucked directly to the

IWTP as waste water. *Id.* Plaintiff claims that the IWTP could not adequately process this chemical, and that the waste water could not be effectively treated by the IWTP because of the chemical. *Id.* Since POS did not have the ability to remove the wheel wash process chemical at the IWTP, the wheel wash water was diluted to a level that would allow discharge of the chemical into the environment, which plaintiff claims violated the NPDES permit. *Id.* ¶ 5. Plaintiff also complained of various defective valves. *Id.* ¶ 6. Plaintiff claims that after reporting these issues, his supervisor, Randy Sweet, and other management began retaliating against him. *Id.* ¶¶ 9-21, 26-35.[1]

### III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

---

[1] The court notes that it has not considered Jonassen's legal conclusions, speculation, or improper opinion testimony, as discussed below.

However, the production of "a scintilla of evidence in support of the non-moving party's position" is not sufficient. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Hyperbole, supposition, and conclusory accusations cannot take the place of evidence. *CarePartners LLC v. Lashway*, Case No. C05–1104 RSL, 2010 WL 1141450 (W.D. Wash. 2010) (citing *British Airways Bd. v Boeing Co.*, 585 F.2d 946, 955 (9th Cir. 1978)). Nor will the production of a stack of uncited documents in opposition to or in support of a motion for summary judgment satisfy a party's burden. The court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also*, *White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").[3]

**A.   Evidentiary Analysis**

In resolving a motion for summary judgment, the court may only consider admissible evidence. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). At the

---

[3] Plaintiff has repeatedly failed to provide pin-point citations to the record in violation of Local Rule W.D. Wash. CR 10(e)(6). Dkt. #54-2 at ns. 4-5, 7-10, 24 (citing pages 59 through 88), 34 (citing pages 28 through 42), 46-47, 50-58. Counsel for plaintiff has also made several inaccurate statements that are unsupported by the factual record in the briefing. The court reminds counsel of his duty of candor to the court. 2 Wash. Prac. RPC 3.3; Local Rules W.D. Wash. GR 2(f), 3. The consistent failure to provide pin-point citations on key issues, along with counsel's hyperbolic arguments and inaccurate representations of the record has confounded the court's efforts to determine whether a genuine issue of material fact exists. The court has spent an inordinate amount of time hunting through the record in an attempt to find the evidentiary basis for plaintiff's factual contentions. The court provided plaintiff with an opportunity during oral argument to provide pin-point citations to the record through a minute order. Dkt. # 61. During oral argument, the court again requested pin-point citations to the record. Counsel for plaintiff failed to refer the court to any specific portion of the record, choosing instead to argue generalities, suppositions, and conclusions.

summary judgment stage, a court focuses on the admissibility of the evidence's content, not on the admissibility of the evidence's form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

The Port moves to strike Mr. Jonassen's declaration because "it is replete with hearsay, speculation, and other 'facts' not admissible at trial." Dkt. # 50 at 1 n.1. The court has read Mr. Jonassen's declaration. Rather than limit his declaration to statements of fact of which he has personal knowledge, plaintiff's declaration includes argument, improper opinion testimony, speculation, hearsay, and legal conclusions. Fed. R. Evid. 602, 701, 702, 801.

In accordance with the Federal Rules of Evidence, the court has considered statements of fact that appear to be within plaintiff's personal knowledge that are not otherwise inadmissible. The court has disregarded all other arguments, legal conclusions, hearsay, speculation, and improper opinion testimony. The court has also considered the exhibits attached to his declaration, except for Exhibit 8 which purports to be an expert report of Gary M. Namie, Ph.D. Dr. Namie has been identified in plaintiff's expert disclosure list as a "Social-Organization Psychologist, Researcher, Author, Consultant and Educator." Dkt. # 29 at 3. The disclosure further states that Dr. Namie is expected to provide testimony related to the plaintiff's injuries relating to workplace retaliation and harassment." *Id.*

An expert witness may testify at trial if such expert's specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702(a) (2011). Such a witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify if (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods; and" (4) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

Plaintiff has not provided the court with sufficient information to determine whether Dr. Namie's scientific technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.  Additionally, the court finds that Dr. Namie's testimony is not based on sufficient facts or data.  Dr. Namie makes his opinion based on a review of "selected case documents which were provided by the plaintiff's attorney, Douglas R. Cloud, a telephone interview with the plaintiff, the cited relevant scientific literature, and [his] knowledge, skills and experience as consultant and management instructor."  Dkt. # 48 (Jonassen Decl.), Ex. 8 at 1.  With respect to the "case documents reviewed," Dr. Namie only identifies plaintiff's second amended complaint, plaintiff's response to the Port's motion for judgment, Port of Seattle tort claim form, the McKay report, a newspaper article, a 2010 State Auditor's report, the Port's employee handbook, a workplace integrity survey, and disciplinary documents and valve repair records contained in the Port's responses. *Id.*  It appears that Dr. Namie has not reviewed any deposition transcripts or any other evidence before the court, other than the disciplinary documents and valve repair records.  Accordingly, the court has disregarded Dr. Namie's report.

### B.   FCA Retaliation

The FCA protects "whistleblowers" from retaliation by their employers for protected activities.  31 U.S.C. § 3730(h); s*ee United States ex. rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).  Section 3730(h) provides, in relevant part, that any employee shall be entitled to relief who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter."  31 U.S.C. § 3730(h)(1).  Plaintiff must establish three elements to prove a FCA retaliation claim:  (1) the employee must have been engaging in conduct protected under the FCA;

(2) the employer must have known that the employee was engaging in such conduct; and (3) the employer must have discriminated against the employee because of his protected conduct. *Hopper*, 91 F.3d at 1269.

    1. <u>Protected Conduct</u>

"Section 3730(h) only protects employees who have acted 'in furtherance of an action' under the FCA. Specific awareness of the FCA is not required. However, the plaintiff must be investigating matters which are calculated, or reasonably could lead to a viable FCA action." *Hopper,* 91 F.3d at 1269. "[A]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002); *see Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (plaintiff engaged in protected activity if reasonably believed that the Port "was possibly committing fraud against the government, and she investigated the possible fraud."). Additionally, an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations is not protected activity. *Hopper*, 153 F.3d at 1269.

With respect to the first prong, Jonassen has stated that he investigated what he believed to be fraud of the Federal Government. Dkt. # 48 (Jonassen Decl.) ¶¶ 9, 38-39. The Port does not dispute that plaintiff has met the subjective prong. Rather, the Port argues that plaintiff has failed to establish the objective prong. Dkt. # 41 at 13; # 50 at 4. In support of the objective prong, plaintiff identifies, without citation to the record, "written and oral reports to his supervisors about contractor misappropriation of property and service; failure of numerous mechanical devices at the IWTP; his complaint about contractors receiving sewage treatment services for 'wheelwash' water and other factual details established herein . . . ." Dkt. # 54-2 at 12. The court has reviewed the factual record and has attempted to find the evidentiary basis for these complaints.

### a. *Violations of NPDES Permit*

Jonassen claims that he "uncovered evidence that the IWTP was not operating properly, resulting in effluent discharges in the Puget Sound Waterway, contrary to" the NPDES permit.  Dkt. # 48 (Jonassen Decl.) ¶ 3, ¶ 37; *see* Dkt. # 47 (Cloud Decl.), Ex. 1 (Price Depo.) at 14:6-18.  He also identifies complaints about "theft of POS property and services" by using IWTP to process "wheel wash waste water" generated by third runway contractors at no cost to the contractor.   Dkt. # 48 (Jonassen Decl.) ¶ 4.  With respect to the wheel wash water, Jonassen claims that the Port was treating contractor waste water for free, and that the water had not been adequately treated resulting in a violation of the NPDES permit.  Dkt. # 48 (Jonassen Decl.) ¶ 5; *see* Dkt. # 47 (Cloud Decl.), Ex. 2 (Sweet Depo.) at 105:3-15.  Jonassen also identifies defective valves in the IWTP system that caused contaminated water to be diluted, which violated the NPDES permit.  Dkt. # 48 (Jonassen Decl.) ¶ 6. *See* Dkt. # 47 (Cloud Decl.), Ex. 2 (Sweet Depo.) at 27:8-24, 29:2-15, 100:1-9, 101:17-24; *id.*, Ex. 3 (Moikobu Depo.) at 93:9-94:21.

Complaints of violations of the NPDES permit are not protected activity. *Hopper*, 153 F.3d at 1269 (investigation of non-compliance with federal or state regulations is not protected activity).  Plaintiff's attempts to save these complaints by characterizing them as "theft of property and services" fail because plaintiff has not provided any evidence that the malfunctioning or other operational issues of the IWTP or the defective valves could reasonably be believed to be possible fraud on the federal government.[2]  Plaintiff's conclusory allegations do not create a genuine issue of material fact.

---

[2] The court notes that plaintiff has failed to present any evidence that federal funds were used, or reasonably could be believed to be used for any of these complaints.

### b. Contractors' Use of Property and Tools

Plaintiff claims he made complaints about "contractors wrongfully using the POS property and tools," "the use and theft of POS tools by contractors," and "potable water being stolen by contractors." Dkt. # 48 (Jonassen Decl.) ¶ 4. Plaintiff provides a 2004 email in support of his complaint with respect to the use and/or theft of property and tools by contractors in which he reported that garden hoses and spray nozzles were destroyed, and that contractors were using the hoses to pump water for fire and dust suppression. *Id.,* Ex. 1. Jonassen was thanked "for watching out for [the] equipment" in response. *Id.* Given this evidence, the court finds that no reasonable employee in the same or similar circumstances could believe that the employer was possibly committing fraud against the government.

### c. FCA Lawsuit

Plaintiff also argues that he was retaliated against as a result of filing the FCA lawsuit on April 1, 2008, Case Number C08-508MJP. Dkt. # 54-2 at 13, 17; Dkt. # 48 (Jonassen Decl.) ¶ 39. The court finds that filing an FCA lawsuit is protected activity.

2. <u>Employer Knowledge and Causal Connection</u>

An employer must be aware that the employee is investigating fraud against the government to possess the retaliatory intent necessary to establish a violation of section 3730(h), and the employer must have discriminated against employee because of his protected conduct. *Hopper*, 91 F.3d at 1269-70.

Even if Jonassen had raised an issue of material fact regarding whether he engaged in protected activity with respect to the reports about the IWTP, he cannot show that the Port was aware that he was investigating fraud against the federal government. Jonassen admits that he had "a separate duty as a waste water treatment operator to comply with all NPDES directives for fear of losing [his] license to process and treat water" and to raise concerns about plant operations, including "fraudulent activity." Dkt. # 48 (Jonassen Decl.) ¶ 8; Dkt. # 51 (Supplemental Cramer Decl.), Ex. 7 (Jonassen Depo.) at 102:7-20.

Accordingly, the monitoring and reporting activities described by Jonassen were exactly those activities he was required to undertake as part of his job duties. Jonassen took no additional steps to put the Port on notice that he was acting in furtherance of an FCA action, rather than merely alerting the Port to mechanical, operational, and defective issues. *See Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 952 (5th Cir. 1994) (no employer knowledge where employee expressed concerns consistent with his job duties, but "never characterized his concerns as involving illegal, unlawful, or false-claims investigations"); *see also Maturi v. McLaughlin Research Corp.*, 413 F.3d 166, 173 (1st Cir. 2005); *Yuhasz v. Brush Wellman, Inc.* 341 F.3d 559, 567-68 (5th Cir. 2003); *Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861, 869 (4th Cir. 1999); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523, n.7 (10th Cir. 1996). Indeed, the only time plaintiff used the term "fraud" to anyone was on April 30, 2008. In his declaration, plaintiff claims that he "did specifically indicate to [Cynthia Alvarez] at Sea-Tac on April 30, 2008, that [he] was investigating fraud." Dkt. # 48 (Jonassen Decl.) ¶ 38. Ms. Alvarez confirmed that Jonassen identified "fraud related to water treatment issues not being appropriately reported to the Department of Ecology." Dkt. # 47 (Cloud Decl.), Ex. 6 (Alvarez Depo.) at 41:6-9. However, there is no evidence that Jonassen reported that the alleged fraud plaintiff complained of was against the federal government, or otherwise connected with the FCA. There is also no evidence that federal funds were used, or reasonably could have been used for the water treatment issues.

With respect to the FCA lawsuit, Jonassen testified that after he filed the FCA lawsuit, he was interviewed regarding the case by the Department of Justice. He testified that the interviewers asked him to keep the information discussed and the fact of filing the *qui tam* case confidential and not to discuss it with anyone. Dkt. # 42 (Cramer Decl.), Ex. 4 (Jonassen Depo.) at 85:7-21. Jonassen also testified that he did not report or discuss his involvement in the *qui tam* case with Mr. Sweet, anyone in human resources,

or management while it was pending. *Id.* at 86:5-13. Jonassen did testify that he told Paul Price, Rob Voight, Dale Parks, and Omayio Moikobu that he was contemplating filing a lawsuit against the Port. *Id.* at 88:8-89:12. However, when pressed about whether he discussed filing litigation relating to wheel wash, commissioning, or leaky valve issues with anyone in management or human resources, he replied that he did not know. *Id.* at 88:13-89:19. More importantly, there is no evidence that he informed his superiors that he was going to file a *qui tam* action or that the litigation he contemplated filing had anything to do with the FCA or fraud against the federal government.

Other witnesses have testified that they found out about the qui tam action in the latter part of 2009 or later from Port attorneys. Dkt. # 42 (Cramer Decl.), Ex. 6 (Mathews Depo.) at 101:10-14 (latter part of 2009); Dkt. # 48 (Cloud Decl.), Ex. 6 (Alvarez Depo.) at 55:4-6 (January 2010). However, plaintiff has failed to produce any evidence linking the Port's knowledge of the FCA action in late 2009 or early 2010 with any alleged retaliatory conduct.

Accordingly, plaintiff has failed to set forth specific facts showing that there is a genuine issue of fact for trial with respect to his FCA retaliation claim.

**C.     Breach of Contract**

The Port argues that there is no evidence supporting plaintiff's breach of contract claim. Dkt. # 41 at 23. Plaintiff has not opposed the Port's motion with respect to the breach of contract claim, which the court construes "as an admission that the motion has merit." Local Rules W.D. Wash. CR 7(b)(2). During oral argument, plaintiff referred to various policies as the evidentiary basis for his breach of contract claim. However, the Port's policies simply recite its obligations under various state and federal statutes. Plaintiff has not produced any evidence that the Port's policies amount to promises of specific treatment in specific situations. *See Quedado v. Boeing Co.*, 168 Wash. App. 363, 368-69, 276 P.3d 365 (2012).

Accordingly, plaintiff has failed to set forth specific facts showing that there is a genuine issue of material fact with respect to his breach of contract claim.

## IV. CONCLUSION

For all the foregoing reasons, the court GRANTS the Port's motion for summary judgment. Dkt. # 41. The court also GRANTS plaintiff's motion to amend its response to conform to the Local Rules. Dkt. # 53.

Dated this 4th day of September, 2012.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge